

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

4-5-2006

# P. N. v. Clementon Bd of Ed

Precedential or Non-Precedential: Precedential

Docket No. 04-4705

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"P. N. v. Clementon Bd of Ed" (2006). *2006 Decisions.* Paper 1192.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/1192

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 04-4705

———

P. N., an infant, individually and by
his parent and legal guardian; M. W.,
                                    Appellants

v.

CLEMENTON BOARD OF EDUCATION

———

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 02-cv-01351)
District Judge: Honorable Freda L. Wolfson

———

Argued December 12, 2005

Before: SLOVITER, SMITH, and STAPLETON,
Circuit Judges.

(Filed: April 5, 2006)

———

Jamie Epstein   (Argued)
Cherry Hill, N.J.  08002

    Attorney for Appellant

James F. Schwerin   (Argued)
Parker, McCay & Criscuolo
Lawrenceville, N.J.  08648

    Attorney for Appellee

———

SLOVITER, <u>Circuit Judge</u>.

Section 615(i)(3)(B) of the Individuals with Disability Education Act ("IDEA") provides: "In any action or proceeding brought under this section, the court, in its discretion, may award reasonable attorneys' fees as part of the costs to the parents of a child with a disability who is the prevailing party." 20 U.S.C. § 1415(i)(3)(B). Plaintiffs-Appellants P.N. and his guardian M.W. (collectively "plaintiffs") appeal from the District Court's Order denying their motion for prevailing party attorneys' fees and granting summary judgment to defendant Clementon Board of Education.

I.

P.N. was born in 1988 and suffers from Attention Deficit Hyperactivity Disorder. During the 2000-01 school year, the Clementon Board of Education ("CBE") expelled P.N. after he sent a note threatening to blow up his school. P.N. was home-schooled for the rest of the year, but was permitted to return to school for the 2001-02 year. P.N. did not repeat that threat but CBE again suspended him during the 2001-02 school year for disruptive behavior. The parties dispute the specific conduct that resulted in this suspension.

Plaintiffs filed a petition for a due process hearing on October 25, 2001.[1] The petition sought the following relief: that

---

[1] It is unclear whether CBE ever filed a cross-petition for a due process hearing. CBE claims to have filed such a petition, Appellee's Br. at 2, but at oral argument, counsel for plaintiffs stated that the school did not file a cross-petition for a due process hearing and counsel for CBE did not contest this statement. The only petition for due process present in the record is P.N.'s. The November 1 consent decree refers only to the "petition for

P.N. be returned to school, that P.N. be reimbursed for the cost of all psychological services received by P.N. since being required to receive such services by CBE,[2] that a § 504 plan under the Rehabilitation Act of 1973 be prepared by CBE,[3] and that P.N. be evaluated by an independent child study team.

The parties settled the underlying dispute before a due process hearing took place, and the Administrative Law Judge (ALJ) entered two consent orders. The first one, dated November 1, 2001, ordered:

> 1. On 11/5/01, C.S.D.[4] shall return P.N. to his current placement that was in place prior to his removal on 10/16/01.

---

emergent relief filed on 10/25/01 with the Office of Special Education of the New Jersey Department of Education by Jamie Epstein, Esquire for petitioner, with Frank Cavallo, Esquire, for respondent, having consented to the following relief." App. at 25.

[2]CBE required that P.N. see a psychologist after his first expulsion from school.

[3]Section 504 of the Rehabilitation Act of 1973 is codified at 29 U.S.C. § 794(a) and provides:

> No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

[4]"C.S.D." refers to Clementon School District.

3

2. On 11/5/01, C.S.D. shall provide P.N. with appropriate accommodation in regards [to] any behaviors which may interfere with P.N.'s ability to receive an education. Dr. Paul Booker may provide assistance in the development of said accommodation.[5] If such assistance is provided, on the return date, this forum shall determine if C.S.D. should reimburse petitioners for Dr. Booker's fees.

3. P.N. is to receive an Independent Child Study Team Evaluation in accordance with the procedures outlined in N.J.A.C. 1:6A-14.3. at C.S.D's expense. The Social Work evaluation shall be performed by C.S.D. The psychiatric evaluation shall be performed by Dr. Raymond H. Schweibert, M.D. If counsel cannot agree on who will do the learning and school psychology evaluations by 11/7/01, each shall submit three names for each evaluation to this forum with the right to object to one of the three proposed evaluators for each evaluation. . . .

4. C.S.D. shall provide petitioners transportation to and from all evaluations.

5. This matter shall reconvene on 12/5/01 before the undersigned A.L.J.

6. This decision is final pursuant to 20 *U.S.C.A.* § 1415(i)(1)(A) and 34 *C.F.R.* § 300.510 (1999). If either party feels that this decision is not being fully implemented, this concern should be communicated in writing to the Director, Office of Special Education Programs.

App. at 25-26 (emphasis in original).

The second Consent Order, dated February 13, 2002,

_____

[5]Dr. Booker is a private mental health professional seen by P.N.

stated that the parties "agreed to a resolution of all remaining issues" and ordered:

> 1.  Respondent [C.S.D.] will pay the parents in the amount of $425.00 in satisfaction of petitioners' claims for reimbursement for the costs of psychological treatment and psychiatric services to date, said payment to be made no later than March 25, 2002.
>
> 2.  Respondents will pay the reasonable costs of attendance at the IEP [Individualized Education Program] meeting of psychologist Paul Booker, . . . said meeting to be scheduled on a date as soon as possible, convenient to all participants, including Dr. Booker, said payment to be made no later than 30 days after said meeting.
>
> 3.  The remaining claims raised in the petition of appeal and subsequent amendments, including petitioners' allegations that the respondent violated their rights to timely receipt of student records, are dismissed.
>
> 4.  The issue of counsel fees is reserved for decision by a court of competent jurisdiction or for amicable resolution between the parties.
>
> 5.  This decision is final pursuant to 20 *U.S.C.A.* § 1415(i)(1)(A) and 34 *C.F.R.* § 300.10(1999).

App. at 27-28.

On March 26, 2002, plaintiffs filed a complaint in the United States District Court for the District of New Jersey setting forth the background and the history of the consent orders and seeking prevailing party attorneys' fees and costs pursuant to the IDEA. CBE responded, inter alia, that plaintiffs are not prevailing parties under the provisions of the IDEA. In July 2002, P.N. and his parents filed a motion to enforce that part of the ALJ Order of February 13, 2002, requiring CBE to pay P.N. $425.00, as well as for statutory interest, attorneys' fees, and costs incurred in enforcing the Order. On October 31, 2002, the

5

District Court issued an opinion denying plaintiffs' motion for $425.00 and costs. The case was then reassigned to another District Judge on March 13, 2003 and marked closed by the clerk of the court. On June 15, 2004 the District Court granted plaintiffs' motion to reopen. Shortly thereafter, plaintiffs filed their motion for prevailing party attorneys' fees. CBE filed a cross-motion for summary judgment.

The District Court granted CBE's motion for summary judgment and denied plaintiffs' motion for attorneys' fees, holding that although the consent orders entered in favor of plaintiffs did not "preclude Plaintiff from being a prevailing party," App. at 10, plaintiffs' success was de minimis and they were therefore not entitled to attorneys' fees. The District Court stated that obtaining an IEP, an order for reimbursement of psychological services in the amount of $425.00, reinstatement in school, and an evaluation by an independent child study team did not constitute a "substantial victory." App. at 13. In addition, the District Court stated that "Plaintiffs did not prevail beyond the basic requirements of the IDEA and N.J.A.C. 1:6A-14.4, and cannot be considered a prevailing party because of their failure to achieve any relief on the merits of their claim that materially altered their legal relationship with CBE. Thus, an award of attorney[s'] fees is inappropriate." App. at 13-14.

Plaintiffs appeal from the District Court's order granting summary judgment to CBE. Plaintiffs contend that the consent orders entered by the ALJ rendered them the prevailing party and that their success was significant. In response, CBE contends that pursuant to the Supreme Court's decision in Buckhannon Bd. v. West Virginia D.H.H.R., 532 U.S. 598 (2001), attorneys' fees cannot be granted for settlements entered into in the course of administrative proceedings. CBE further contends that even if attorneys' fees can be recovered for consent orders entered into pursuant to administrative proceedings, the District Court correctly found that plaintiffs had only de minimis success in this case.

II.

6

This court has jurisdiction pursuant to 28 U.S.C. § 1291. We review a grant of summary judgment de novo, applying the same standard as did the district court. Antonelli v. New Jersey, 419 F.3d 267, 272 (3d Cir. 2005). In reviewing the grant of summary judgment, we must view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion. In re Flat Glass Antitrust Litig., 385 F.3d 350, 357 (3d Cir. 2004). Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56.

This court reviews the District Court's denial of attorneys' fees for abuse of discretion. Pierce v. Underwood, 487 U.S. 552, 559 (1988); Morgan v. Perry, 142 F.3d 670, 682-83 (3d Cir.1988). An abuse of discretion occurs when a district court's decision "rests upon a clearly erroneous finding of fact, an errant conclusion of law or an improper application of law to fact." Hanover Potato Products, Inc. v. Shalala, 989 F.2d 123, 127 (3d Cir. 1993) (quotation marks and citations omitted). However, if the District Court denied the fees based on its conclusions on questions of law, our review is plenary. Washington v. Heckler, 756 F.2d 959, 962 (3d Cir.1986).

III.

A. The *Buckhannon* Standard

Under the "American Rule," parties are typically responsible for their own attorneys' fees. See Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240 (1975). As noted above, however, the IDEA, 20 U.S.C. § 1440, et seq., contains a specific provision authorizing an order for such fees as "part of the costs to the parents of a child with a disability who is the prevailing party." J.O. ex rel. C.O. v. Orange Tp. Bd. of Educ., 287 F.3d 267, 271 (3d Cir. 2002) (citing 20 U.S.C. § 1415(i)(3)(B)).

In Buckhannon Bd. v. West Virginia D.H.H.R, the Supreme Court clarified its interpretation of the term "prevailing

party." 532 U.S. at 605.  The Court held that in order to be a "prevailing party," a party must be "successful" in the sense that it has been awarded some relief by a court.  Id. at 603.  The Court noted that this concept of "success," however, is not inconsistent with a defendant's voluntary compliance. The Court acknowledged that a party benefitting from a settlement agreement, for example, could be a "prevailing party," provided the "change in the legal relationship of the parties" was in some way "judicially sanctioned." Id. at 605; see also John T. ex rel. Paul T. v. Delaware County Intermediate Unit,  318 F.3d 545, 556 (3d Cir. 2003).

This court has held that Buckhannon applies to the fee-shifting provision of the IDEA.  See John T., 318 F.3d at 556 (holding that "Buckhannon applies to attorney[s'] fee claims brought under the IDEA fee-shifting provision").  In interpreting Buckhannon, we have stated that "a *stipulated settlement* could confer prevailing party status under certain circumstances," John T., 318 F.3d at 558 (emphasis in original); namely, where it alters the legal relationship of the parties and is judicially sanctioned.  A stipulated settlement is judicially sanctioned where it: 1) contains mandatory language; 2) is entitled "Order," 3) bears the signature of the District Court judge, not the parties' counsel; and 4) provides for judicial enforcement.  Id. (citing Truesdell v. Phila. Hous. Auth., 290 F.3d 159 (3d Cir. 2002)); see also Preservation Coalition v. Federal Transit Admin., 356 F.3d 444, 452 (2d Cir. 2004) (holding that Buckhannon does not limit fee awards to enforceable judgments on the merits and consent decrees); Christina A. v. Bloomberg, 315 F.3d 990, 993 (8th Cir. 2003) (holding that a court-approved settlement was not enforceable by the court absent a new action for breach of contract and therefore plaintiffs were not prevailing parties).

The District Court found that the consent decrees at issue here met the requirements set forth in John T. and Truesdell. The District Court noted that the Consent Order entered on February 12 "(1) contain[ed] mandatory language stating that [CBE] 'will' do certain things, (2) was entitled 'Consent Order,' (3) bore the signature of the ALJ, and (4) is enforceable under § 1983 and in state court." App. at 10.

CBE contends that to constitute a decree under Buckhannon, a court must retain jurisdiction to enforce the settlement and have the power to issue a citation for contempt for non-compliance. It argues that because the ALJ here did not and could not[6] retain jurisdiction to enforce its consent orders in accordance with Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375 (1994), these orders lacked the judicial imprimatur required by Buckhannon to confer prevailing party status.

The Supreme Court had previously considered whether a court maintains jurisdiction to enforce a settlement agreement when it does no more than "so order" a stipulation and order of dismissal that dismisses the complaint after settlement without reference to the settlement agreement. Id. The Court held that there was no jurisdiction, but noted that

> [t]he situation would be quite different if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal. . . . In that event, a breach of the agreement would be a violation of the order and . . . jurisdiction to enforce the agreement would therefore exist.

Id. at 38. Kokkonen suggests settlement of an administrative proceeding is the equivalent of an administrative decree on the merits where, as here, the parties' obligation to comply with the terms of the settlement agreement has been made part of the order of dismissal. See A.R. ex rel. R.V. v. New York City Dept. of Educ., 407 F.3d 65 (2d Cir. 2005).

---

[6] See, e.g. Bellesfield v. Bd. of Educ. of Randolph, 96 N.J.A.R. (EDU) 35 (N.J. Adm. 1995) ("Administrative Agencies only have those powers specifically granted either expressly or by implication. An Administrative Officer is a creation of Legislation who must act only within the bounds of the authority delegated to him. . . . [and] does not have the power and is not the appropriate forum . . . for enforcement.")(citations and quotation marks omitted).

The Court of Appeals for the Second Circuit has convincingly addressed and rejected an argument similar to the one that CBE makes here. In A.R., the parents of disabled children instituted four separate New York State administrative proceedings challenging, under the IDEA, the special educational programs that the New York City Department of Education had provided for disabled children. In two of the four proceedings, impartial hearing officers entered decisions for the plaintiffs on the merits. In the two others, impartial hearing officers issued "Statements of Agreement and Order" that recorded the terms of settlement agreements between the parties. The plaintiffs then sought attorneys' fees. The Court of Appeals held that IDEA administrative decisions may, in certain circumstances, confer prevailing party status. It noted that although an administrative decision on the merits in an IDEA case does not have judicial imprimatur, it has administrative imprimatur:

> Its terms are enforceable, if not by the IHO itself,[7] then by a court, including through an action under 42 U.S.C. § 1983. . . . [W]e conclude that the combination of administrative *imprimatur*, the change in the legal relationship of the parties arising from it, and subsequent judicial enforceability, render such a winning party a 'prevailing party' under Buckhannon's principles.

A.R., 407 F.3d at 76 (emphasis in original).

The Second Circuit specifically rejected the argument made by the Board of Education there, similar to that made by CBE here, that plaintiffs "cannot be 'prevailing parties' because the IHOs conducting their hearings lacked jurisdiction to enforce the terms of the settlement agreements . . . . Under our analysis, the fact that the IHOs, as is common in administrative procedures, have no enforcement mechanism . . . is irrelevant, at least so long as judicial enforcement is available." We are

---

[7]IHOs are Impartial Hearing Officers who are appointed by the local board of education.

persuaded by the analysis in A.R.

CBE argues that because N.J. Admin. Code § 1:1-19.1 (2006) mandates review of settlements by an ALJ, the ALJ's signature here does not provide the required judicial imprimatur; it simply attests to the fact that the Orders were not contrary to law. CBE cites to Christina A. v. Bloomberg, 315 F.3d 990 (8th Cir.2003), in support of this proposition. In Christina A., the plaintiffs, inmates at a training school who had challenged the education being provided, obtained a hearing and approval of a settlement pursuant to Fed. R. Civ. P. 23(e), which requires that "[t]he court must approve any settlement . . . of a certified class." The Eighth Circuit held that they were not prevailing parties for purposes of fees because this type of agreement is not enforceable by a court absent a separate breach of contract action, and therefore, does not bear the necessary judicial imprimatur.

As is clear from A.R., a settlement of administrative proceedings that is judicially enforceable meets the Buckhannon requirements. Because the consent orders entered here were enforceable through an action under 28 U.S.C. § 1983 and under state law, these consent orders, unlike those in Christina A., satisfy Buckhannon.

B. Prevailing Party Status

We turn to the basis on which the District Court denied plaintiffs' motion for attorneys' fees: its conclusion that plaintiffs "cannot be considered [ ] prevailing part[ies] because of their failure to achieve any relief on the merits of their claim that materially altered their legal relationship with CBE." App. at 13. The Supreme Court has rendered a number of decisions on this issue. In Farrar v. Hobby, the Court held that "a plaintiff 'prevails' when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." 506 U.S. 103, 111-12 (1992) "[P]laintiffs may be considered 'prevailing parties' for attorney[s'] fees purposes if they succeed on any *significant* issue in litigation which achieves

11

some of the benefit the parties sought in bringing suit." Hensley v. Eckerhart, 461 U.S. 424, 433 (1983) (emphasis added) (quotation marks and citation omitted). Thereafter, the Court stated that, to succeed, "at a minimum, . . . the plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." Texas State Teachers Ass'n v. Garland Indep. Sch. Dist., 489 U.S. 782, 792 (1989).

We summarized our review of the applicable legal principles in Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., where we held that a resolution "materially alters the legal relationship between the parties" when it "modif[ies] the defendant's behavior in a way that directly benefits the plaintiff." 172 F.3d 238, 251 (3d Cir. 1999) (citations and quotation marks omitted).

The Supreme Court noted that certain victories may be "technical or de minimis" but characterized its approach as adopting a "generous formulation" of "prevailing party" status. See Texas State Teachers, 489 U.S. at 792; J.O., 287 F.3d at 271. In a later case, the Court clarified the distinction that exists between the issue of plaintiff's eligibility for an attorney's fee award and the amount of the attorney's fee that should be awarded.

In Farrar, the Court first explained the meaning of "technical" victory by providing the following example:

> In [Texas State Teachers], the District Court declared unconstitutionally vague a regulation requiring that "nonschool hour meetings be conducted only with prior approval from the local school principal." . . . [T]his finding alone would not sustain prevailing party status if there were "'no evidence that the plaintiffs were ever refused permission to use school premises during non-school hours.'" . . . Despite winning a declaratory judgment, the plaintiffs could not alter the defendant school board's behavior toward them for their benefit.

12

<u>Farrar</u>, 506 U.S. at 113. The Court then stated:

> Now that we are confronted with the question whether a nominal damages award is the sort of "technical," "insignificant" victory that cannot confer prevailing party status, we hold that the prevailing party inquiry does not turn on the magnitude of the relief obtained. We recognized as much in <u>Garland</u> when we noted that "the <u>degree</u> of the plaintiff's success" does not affect "eligibility for a fee award."
>
> Although the "technical" nature of a nominal damages or any other judgment does not affect the prevailing party inquiry, it does bear on the propriety of fees awarded under § 1988.

<u>Farrar</u>, 506 U.S. at 113-14 (emphasis in original; citations omitted).

The District Court's finding that plaintiffs' success was not "substantial" is largely irrelevant to a determination of whether or not they were prevailing parties. "'[T]he degree of the plaintiff's overall success goes to the reasonableness of the award under <u>Hensley</u>, not to the availability of a fee award *vel non*.'" <u>Truesdell</u>, 290 F.3d at 166 (3d Cir. 2002) (quoting <u>Texas State Teachers</u>, 489 U.S. at 782). The relevant inquiry is whether plaintiffs' success was significant. Regardless of how substantial their success, if plaintiffs succeeded on a significant issue they are entitled to prevailing party status.

Plaintiffs here received all that they sought. Specifically, they sought that P.N. be returned to school immediately, that CBE reimburse them for the cost of all psychological services received by P.N., that CBE hold a meeting to develop a section 504 accommodation plan for P.N., that CBE pay for P.N.'s psychologist to participate in said meeting, and that the child study team evaluation requested by the school be performed by an independent child study team.

13

Plaintiffs obtained orders from the ALJ requiring that each of these demands be met. The Orders benefitted P.N. and forced CBE to change its behavior, thus altering their legal relationship. As such, the Orders meet the standards enunciated by the Supreme Court.

The District Court's conclusion that the plaintiffs' failure to "prevail beyond the basic requirements of the IDEA," App. at 13, and achieve substantial relief precluded them from prevailing party status is perplexing. The purpose of the fee provision in IDEA is to enable parents or guardians of disabled children for whom the statute was enacted to effectuate the rights provided by the statute. To suggest, as CBE does, that plaintiffs must establish a new right or expand the requirements of the IDEA in order to obtain attorneys' fees is to ignore the Supreme Court's "generous formulation" of the term "prevailing party." Texas State Teachers, 489 U.S. at 792. As required by the Supreme Court's interpretation of "prevailing party," discussed supra, the Orders altered the legal relationship between the parties by compelling the school to reinstate P.N. and by forcing CBE to act in accordance with the IDEA.

CBE contends that the relief obtained in this case is identical to the relief obtained in J.O., 287 F.3d at 267, where the plaintiff was denied attorneys' fees. The cases are distinguishable. In J.O., this court held that a party cannot be a prevailing party if it receives interim relief that is not merit-based. The plaintiff in J.O. filed suit for attorneys' fees after an ALJ granted her request that her child, C.O., be reinstated in the public high school. The ALJ's order to reinstate C.O. in school "[was] effective only until an appropriate placement could be found for C.O. or until a 'further Order of an [ALJ], or until the issuance of a final decision in this matter.'" J.O., 287 F.3d at 274. This court characterized the reinstatement as a "stay-put" order to maintain the status quo that would have no effect on C.O.'s further educational placement, rather than a determination of the merits of the case. Thus, the order did not render the plaintiffs the prevailing party.

CBE argues that, like C.O., P.N. was returned to his

14

previous placement in high school. This argument is unavailing, however, because, unlike the order in J.O., there is no indication that the Orders at issue here are temporary stay-put orders. The Orders do not state that P.N.'s reinstatement is pending a further hearing or proceeding, or that the reinstatement will end on any particular date. Rather, the Orders unconditionally require his reinstatement in school. Moreover, plaintiffs were successful on other fronts. As noted above, they received, inter alia, reimbursement for psychological services and an evaluation by an independent child study team rather than the CBE's child study team, as CBE wanted.

CBE also contends that insofar as P.N. obtained an IEP, this was only a de minimis victory. CBE cites to John T., 318 F.3d at 545, for the proposition that obtaining an IEP does not give a plaintiff prevailing party status. Once again, the cases are not comparable. In John T., we held that plaintiffs who had obtained an acceptable IEP were not entitled to prevailing party status only because the IEP was achieved through private negotiation. We stated, "Although John T. undoubtedly realized an objective of his litigation upon obtaining an acceptable IEP which placed him in public schools, this result was not 'judicially sanctioned' as required by Buckhannon. John T. and [the defendant] developed the IEP through negotiations out of court." Id. at 560. We did not hold, as CBE contends, that securing an IEP is insufficient to obtain prevailing party status. Our analysis focused only on the fact that the IEP was achieved through "negotiations out of court." 318 F.3d at 560.[8]

---

[8] The District Court's conclusion that the ALJ's order requiring reimbursement of P.N. for $425 in psychologist's fees was a de minimis recovery that could not make P.N. a "prevailing party" is particularly troubling for two reasons. First, as we have pointed out, there is no de minimis exception to the rule that a plaintiff "prevails" whenever "relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that benefits the plaintiff." Farrar, 506 U.S. at 111-12. See p. __, infra. In Farrar, for example, the Supreme Court found a plaintiff who received $1

15

Because plaintiffs are prevailing parties who have achieved success on significant issues, we will reverse the District Court's Order granting summary judgment to CBO, and remand this case to that court with instructions to award reasonable attorneys' fees to plaintiffs.

---

in nominal damages to be a prevailing party. Second, even when considered for the purpose of determining the amount of attorneys' fees to be awarded, an award of $425 in the context of the IDEA can hardly be regarded as de minimis. As Amici point out, IDEA claims often involve low income families raising handicapped or otherwise troubled children receiving some kind of public assistance. See Br. Amici Curiae of Nonprofit Educational Organizations at 19. Indeed, we believe the IDEA's fee shifting provision is specifically designed to protect those families for whom $425 is not a de minimis amount of money.