NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 10-4741
_____

GARY E. SMITH, SR.,

Appellant

v.

HOUSING AUTHORITY OF THE COUNTY OF DAUPHIN
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 1-09-cv-00765)
District Judge:  Honorable John E. Jones, III
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 12, 2011

Before:  RENDELL, SMITH and FISHER, *Circuit Judges*.

(Filed: July 26, 2011)
_____

OPINION OF THE COURT
_____

FISHER, *Circuit Judge*.

        Gary E. Smith, Sr., appeals from the District Court's entry of summary judgment

disposing of his Title VII employment discrimination claims arising from his not being

selected for a new position with the Dauphin County Housing Authority ("DCHA"). For the reasons set forth below, we will affirm.

I.

We write principally for the parties, who are familiar with the factual context and legal history of this case. Therefore, we set forth only those facts necessary to our analysis.

Gary E. Smith, Sr., a black male, has been employed by the DCHA as a Project Manager since 1998. Throughout his employment, Smith has shown himself to be competent and dedicated to his work responsibilities, as reflected in several favorable evaluations. However, his employment record also reveals a pattern of aggression and conflict with tenants and coworkers, including his supervisor, Charles Gassert, Executive Director of DCHA.

In January 2007, Gassert contacted the Pennsylvania Civil Service Commission requesting to create a position for a Social Services Director, which would ultimately come to be known as the Senior Citizens Service Coordinator. The duties of the position included counseling elderly residents and assisting them in obtaining services and coordinating activities.

Later that January, Gwen Copeland, a white female and project manager from the City of Harrisburg Housing Authority, contacted Gassert to express her interest in the new position and met with him to discuss it. In mid-February, Smith also met with Gassert to discuss his interest in the new position. At such time, the position had not

2

been officially announced. After the position was posted, Smith and Copeland applied, and Gassert selected Copeland.

Smith filed administrative complaints with the Pennsylvania Human Relations Commission and the Equal Employment Opportunity Commission ("E.E.O.C.") for discrimination. Smith was granted permission to sue by the E.E.O.C. and filed suit immediately thereafter. Smith's original complaint contained claims for "sex" and "race" discrimination and "retaliation" under Title VII, 42 U.S.C. § 2000e, *et seq*., and for "retaliation" under the Pennsylvania Human Relations Act ("PHRA"), 43 Pa. Cons. Stat. §§ 951-963. Smith subsequently dropped his retaliation claims under Title VII and PHRA.

At the close of discovery, the DCHA moved for summary judgment. Finding that Smith had failed to discredit the DCHA's legitimate nondiscriminatory reason for not selecting Smith, the District Court granted summary judgment in favor of the DCHA. Smith timely appealed.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claim pursuant to 28 U.S.C. § 1367. We have jurisdiction under 28 U.S.C. § 1291. We review grants of summary judgment *de novo*, construing all conflicting facts and reasonable inferences in the light most favorable to the non-moving party. *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848, 852 (3d Cir. 2006).

## III.

3

Title VII employment discrimination analysis involves a three-step burden-shifting paradigm. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The plaintiff carries the initial burden of establishing a prima facie case of discrimination.[1] *Id.* The burden then shifts to the employer to offer a legitimate, nondiscriminatory reason for the challenged employment action. *Id.* The burden then shifts back to the plaintiff. *Id.* To survive summary judgment, a plaintiff must show that the employer's proffered reasons were merely pretexts for discrimination by pointing to sufficient evidence, "direct or circumstantial, from which a factfinder would reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 413 (3d Cir. 1999) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)) (the "*Fuentes* prongs"). To discredit the proffered nondiscriminatory reasons and satisfy the first *Fuentes* prong, "the nonmoving plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could rationally find them unworthy of credence." *Id.* (quoting *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108-09 (3d Cir. 1997)).

---

[1] A prima facie case can be made by showing "(i) that [plaintiff] belongs to a racial minority; (ii) that [plaintiff] applied and was qualified for a job for which the employer was seeking applicants; [and] (iii) that, despite [plaintiff's] qualifications, he was rejected . . . ." *McDonnell*, 411 U.S. at 802. Solely for the purposes of the summary judgment, DCHA conceded that Smith was able to make a prima facie case.

4

Smith contends that he provided sufficient evidence to discredit DCHA's claim that it was Smith's aggressive and confrontational personality that compelled it not to select him for the position of SCCC. We are not persuaded. Smith relies mostly on his annual work evaluations from 1998 to 2007 for his current position with the DCHA. While it is true that these evaluations provide positive comments about his work ethic and dedication to his job, they do not, as Smith argues, indicate that he is objectively the most qualified for the position, nor do they adequately rebut the articulated reasons for his nonselection. Smith does not respond to the litany of documentation revealing a pattern of conflicts, confrontations, and aggression toward tenants and coworkers. (*See* App. at 305-22.) We hold that Smith failed to discredit DCHA's proffered reason for not selecting him for the position. The DCHA met its burden, and Smith failed to establish sufficient evidence that could lead a factfinder to reasonably disbelieve DCHA's assertion that it believed Smith's temperament made him ill-suited for a position that requires patience, demonstrable compassion, and social mediation skills. *See Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256-57 (1981) (holding that the employer "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus").

Smith next argues that pretext can be inferred from an employer giving a significant advantage exclusively to the selected candidate. Smith only mentions two alleged advantages. He asserts that Copeland received an unfair advantage when she was

allowed to meet with Gassert to discuss the position before it was posted. But Smith also met with Gassert to discuss the position before it was posted. Smith also argues that Gassert's secretary assisted Copeland in completing the application paperwork for the position and that he did not receive similar assistance. But the assistance provided was minor and bears no relation to the DCHA's decision to hire Copeland instead of Smith. The sole, articulated reason for Smith's nonselection was Smith's history of confrontations. Construing all conflicting facts and reasonable inferences in the light most favorable to Smith, we find that the grant of summary judgment was proper.

IV.

For the foregoing reasons, we will affirm the order of the District Court.