**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-3552
_____

G. W.; MK. W.,
Appellants

v.

RINGWOOD BOARD OF EDUCATION
_____

APPEAL FROM THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF NEW JERSEY
(D.C. Civ. Action No. 2-19-cv-13734)
District Judge: Honorable John M. Vazquez
_____

Argued: October 27, 2021
_____

Before: GREENAWAY, JR., KRAUSE, and PHIPPS, *Circuit Judges*.

(Opinion Filed: March 16, 2022)


John D. Rue [*ARGUED*]

John Rue & Associates
40 South Fullerton Avenue
Suite 29
Montclair, NJ 07042

Donald A. Soutar
Coyle Law Group
55 Madison Avenue
Suite 400
Morristown, NJ 07960

Robert C. Thurston
Thurston Law Offices
100 Springdale Road A3
PMB 287
Cherry Hill, NJ 08003

     *Counsel for Appellants*

Jessika Kleen [**ARGUED**]
Machado Law Group
1 Cleveland Place
Springfield, NJ 07081

     *Counsel for Appellee*

_____

**OPINION**
_____

GREENAWAY, JR., *Circuit Judge*.

The Individuals with Disabilities Education Act ("IDEA") establishes an administrative process to vindicate a student with a disability's right to a free appropriate public education ("FAPE") from his or her school district. That process culminates in a due process hearing wherein an impartial hearing officer, usually an administrative law judge ("ALJ"), considers whether the school district has provided a FAPE. After the hearing, the IDEA envisions entry of an order detailing the ALJ's conclusions. The aggrieved party is then permitted to appeal that administrative determination in a federal district court. In this appeal, we consider whether the entry of a "Decision Approving Settlement" in an IDEA dispute satisfies the jurisdictional prerequisite to an appeal of an administrative IDEA determination pursuant to 20 U.S.C. § 1415(i). We conclude that it does. Accordingly, we will reverse the order of the District Court and remand the matter for consideration of the merits.

## I.   BACKGROUND

M.W. is a minor child eligible for special education and related services pursuant to the IDEA. Appellants G.W. and Mk. W. are his parents. On August 16, 2018, Appellants filed a Petition for Due Process against appellee Ringwood Board of Education (the "Board") before the Commissioner of Education of the State of New Jersey. On September 17, 2018, the New Jersey Department of Education gave the parties notice that the matter had been transferred to the Office of Administrative Law ("OAL") and a hearing before an ALJ was scheduled for October 4, 2018. After an adjournment, the hearing was rescheduled for May 7, 2019. On May 7, prior to the scheduled hearing time, the ALJ met with counsel for both parties. After conferring with counsel, the ALJ met with G.W.

3

and a representative from the Board.[1]  The parties purportedly entered into a settlement agreement and the terms of the agreement were read into the record.

In a "Decision Approving Settlement," the ALJ made the following findings:

> 1. The parties have voluntarily agreed to the settlement as evidenced by their signatures or their representatives' signatures on the attached document.
>
> 2. The settlement fully disposes of all issues in controversy between them and is consistent with the law.

A50-51.

The ALJ also explicitly ordered "that the parties comply with the settlement terms."  The settlement agreement, among other things, reflects that the parties would each bear their own fees and costs.

On May 10, 2019, Appellants wrote separately to the Superintendent of Ringwood Public Schools and all members of the Board repudiating the agreement.  That same day, Appellants filed a motion before the ALJ to "set aside the settlement."

On June 14, 2019, Appellants filed a complaint in the District Court for the District of New Jersey.  The complaint alleged that Appellants did not knowingly and voluntarily enter into the agreement; they sought relief pursuant to the IDEA (Count

---

[1]  Only G.W. was present at the hearing date for Appellants.

4

One), the New Jersey Declaratory Judgment Act to declare the settlement void (Count Two), and the New Jersey Declaratory Judgment and Civil Rights Acts to declare the attorney fee waiver void (Count Three).

The Board moved to dismiss the complaint. In resolving the motion, the District Court *sua sponte* raised the issue of subject matter jurisdiction. It characterized Plaintiff's complaint as arising out of contract law and questioned whether the ALJ's bare findings that the settlement was entered into voluntarily and resolved all disputes before the OAL satisfied the jurisdictional requirements of the IDEA. Accordingly, the District Court denied the motion to dismiss without prejudice and directed the parties to brief the issue of subject matter jurisdiction.

After the parties briefed the issue, the District Court concluded that it was without jurisdiction. It held that no jurisdiction was conferred by two provisions of the IDEA providing for the enforceability of settlement agreements in the federal courts: 20 U.S.C. § 1415(e), the mediation provision; or § 1415(f)(1)(B), the resolution session provision. It also held that no jurisdiction attached pursuant to § 1415(i) because the ALJ's decision was not based on "substantive grounds," as required by § 1415(f). The District Court accordingly dismissed the matter without prejudice for lack of subject matter jurisdiction. Appellants filed this timely appeal.

## II. JURISDICTION AND STANDARD OF REVIEW

This Court has "jurisdiction pursuant to 28 U.S.C. § 1291 over a dismissal for lack of subject matter jurisdiction." *Nichols v. City of Rehoboth Beach*, 836 F.3d 275, 279 (3d Cir. 2016).[2]

"We exercise plenary review over a district court's order dismissing a complaint for lack of subject matter jurisdiction." *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 271 (3d Cir. 2014) (citing *Taliaferro v. Darby Twp. Zoning Bd.*, 458 F.3d 181, 188 (3d Cir. 2006)). "A challenge to subject matter jurisdiction . . . may be either a facial or a factual attack." *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). This is a facial attack on jurisdiction, "contest[ing] the sufficiency of the pleadings." *Batchelor*, 759 F.3d at 271. This Court thus "review[s] only whether the allegations on the face of the complaint, taken as true, allege facts sufficient to invoke the jurisdiction of the district court." *Id.* (quoting *Taliaferro*, 458 F.3d at 188).

## III. ANALYSIS

We begin from the premise that "[f]ederal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). "It is to be presumed that a cause lies outside this limited jurisdiction and the burden

---

[2] Though the Board argues that the dismissal without prejudice is not an appealable final order, its contention is without merit. *See Nichols*, 836 F.3d at 279; *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 271 (3d Cir. 2014) ("We have appellate jurisdiction over an appeal from a dismissal for lack of subject matter jurisdiction under 28 U.S.C. § 1291").

of establishing the contrary rests upon the party asserting jurisdiction." *Id.* (citations omitted).

Appellants argue that 20 U.S.C. § 1415(i) confers jurisdiction over Count One of the complaint to the District Court, and that the District Court had supplemental jurisdiction over Counts Two and Three of the complaint pursuant to 28 U.S.C. § 1367. They interpret this Court's decision in *P.N. v. Clementon Bd. of Educ.*, 442 F.3d 848 (3d Cir. 2006), as acknowledging jurisdiction over settlements of administrative matters embodied in an ALJ's consent order. They theorize that the ALJ's incorporation of the terms of the settlement into its final order is a decision on the merits and that the ALJ's direction that the parties comply with the agreement preserves jurisdiction for the District Court. Appellants also argue that the District Court should have exercised general "arising under" jurisdiction pursuant to 28 U.S.C. § 1331 over Count One. They submit that their claim arises out of the IDEA and that the District Court was without discretion to decline jurisdiction.

The Board denies that federal question jurisdiction is invoked by Appellants' claims. The Board submits that the IDEA only empowers federal courts to review settlements arising out of the prescribed mediation process or resolution session in § 1415. It notes that the settlement agreement in this matter was not reached pursuant to either process. It maintains that § 1415(i)(2)(A) can only confer jurisdiction if, after a due process hearing, an aggrieved party seeks review of a hearing officer's findings and decision determining on substantive grounds whether the student received a FAPE. In its view, the colloquy before the ALJ and accompanying order in this case do not meet that standard.

7

### A. IDEA Statutory Scheme

Congress enacted the IDEA "to ensure that all children with disabilities have available to them a [FAPE]." *Y.B. v. Howell Twp. Bd. of Educ.*, 4 F.4th 196, 198 (3d Cir 2021) (quoting 20 U.S.C. § 1400(d)(1)(A)). "'The IDEA offers federal funds to States in exchange for a commitment[ ] to furnish' a FAPE 'to all children with certain physical or intellectual disabilities.'" *Id.* (quoting *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 748 (2017)) (alteration in original). The IDEA directs States to "implement specified procedural safeguards to ensure children with disabilities and their parents are provided with due process." *Batchelor*, 759 F.3d at 272. "These safeguards, known collectively as the IDEA's administrative process, provide parents with an avenue to file a complaint and to participate in an impartial due process hearing" addressing, among other things, "the provision of a [FAPE] to [their] child." *Id.* (quoting 20 U.S.C. § 1415(b)(6)(A)).

"Following completion of the IDEA's administrative process . . . the IDEA affords '[a]ny party aggrieved by the findings and decisions' made during or pursuant to the impartial due process hearing an opportunity for judicial review." *Id.* (quoting § 1415(i)(2)(A)) (alteration in original). Accordingly, "the IDEA 'confers upon disabled students an enforceable substantive right to public education in participating States.'" *Y.B.*, F.4th at 198 (quoting *Honig v. Doe*, 484 U.S. 305, 310 (1988)).

### B. Jurisdiction over the Complaint

Appellants contend that the "Decision Approving Settlement" entered by the ALJ here is an appealable determination arising out of their due process complaint. We agree.

8

The Board submits that perfunctory approval of a settlement agreement does not give rise to a civil action pursuant to the IDEA. It insists that Appellants' action is a request for judicial review of a settlement agreement and that such review is only available for settlement agreements reached in connection with a mediation, § 1415(e)(2)(F), or resolution session, § 1415(f)(1)(B).

However, this mischaracterizes Appellants' complaint.[3] Appellants are challenging the ALJ's order terminating their due process petition. Appellants claim that they did not enter into any settlement agreement purportedly resolving the issues they raised. Whatever the merits of that claim, it must be considered by the District Court. The appropriate inquiry is whether the ALJ correctly determined that the purported settlement agreement warranted entry of a final order in this case. It does not confound jurisdiction that Appellants contend that the ALJ's determination was in error because the purported settlement agreement was invalid as a matter of contract law.[4]

---

[3] The dissent also frames the issue as one of the validity of the settlement agreement under state-law contract principles. *See Dissent* at 1. This framing, however, disregards the ALJ's determination that the purported agreement was "consistent" with the IDEA.

[4] Our caselaw suggests that the substantive determination of whether a party validly waived their rights pursuant to the IDEA is not governed by ordinary contract principles but rather by a totality-of-the-circumstances analysis. *See W.B. v. Matula*, 67 F.3d 484, 497-98 (3d Cir. 1995), *abrogated in part by A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 803 (3d Cir.

9

The text and structure of the IDEA reflect Congressional intent to permit judicial review of ALJ determinations impacting a student with a disability's substantive rights pursuant to the IDEA. Here, the order itself purports to resolve "all issues in controversy" between the parties on the grounds that "[t]he parties have voluntarily agreed" to resolve the claims in a manner "consistent with the law." A50-51. Additionally, our determination squares with our caselaw permitting enforcement of the substantive terms of a settlement agreement as embodied in an administrative order.

### i. Section 1415's text

Congress crafted the IDEA to provide a comprehensive remedial scheme through which district courts may review final administrative determinations. *See A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 803 (3d Cir. 2007) (en banc). The Board's position, if adopted by this Court, would substantially limit this remedial scheme by shielding from judicial review a subset of determinations by an ALJ which affect a student's rights under the IDEA. Because this would be contrary to both the text and purpose of the IDEA, we decline to introduce such tension.

Section 1415(i)(2)(A) permits a civil action in state or federal court where the party is challenging a "findings and decision made under subsection (f)." Subsection (f), governing the "[i]mpartial due process hearing," establishes the baseline procedures for due process hearings, including the time and manner in which a complaint may be brought. § 1415(f)(1)(A)

---

2007) (en banc). We need not resolve that issue now. We leave it to the District Court on remand to determine the appropriate test for determining the validity of the waiver.

10

and (f)(3)(C); *see also* § 1415(b)(6) and (b)(7). It limits who may preside over the hearing, what issues may be raised at the hearing, and the scope of the hearing officer's decision. § 1415(f)(3). It directs that "a decision made by a hearing officer shall be made on substantive grounds based on a determination of whether the child received a [FAPE]." § 1415(f)(3)(E)(1).

By its own terms, the order appealed to the District Court reflects the ALJ's determination: (1) of what the issues raised in the due process complaint are; (2) that there is an agreement whose terms resolve the issues raised; (3) that the parties mutually assented to that settlement agreement; and (4) that the agreement's material terms comply with the IDEA's mandate that participating school districts provide students with disabilities a FAPE. Clearly, these terms fall within the scope of a decision made on substantive grounds, as required by subsection (f). 20 U.S.C. § 1415(f)(3)(E)(1).

The order also explicitly incorporates the terms of the agreement, which undoubtedly address M.W.'s rights pursuant to the IDEA, namely, the provision of a FAPE. It purports to be "final" and informs the parties that they may appeal pursuant to § 1415(i), demonstrating an understanding that the ALJ's duty to hear Appellants' complaint was discharged. These factors likewise compel a conclusion that the decision approving settlement is an appealable order.[5]

---

[5] The dissent argues that we seek to enlarge Appellants' rights into a netherworld with which we are unfamiliar. *See generally* Dissent. We highlight the characteristics of the order at issue here because they compel a conclusion that the ALJ issued a substantive decision on the matter at hand.

11

Adopting the Board's position would require holding that, to be appealable, any administrative order disposing of an IDEA dispute must be premised on an explicit determination of whether a student received a FAPE from the school district. That ignores that subsection (f) contemplates a range of findings by the ALJ and establishes a procedural baseline for how the hearing is to be conducted.[6]

Such an interpretation would preclude, for example, federal judicial review of an ALJ's determination that a complaint was filed out of time, § 1415(f)(1)(A), or that notice was lacking, § 1415(f)(3)(B). It would also remove from federal jurisdiction a party's claim that the hearing officer is neither impartial nor qualified, a procedural defect presumably undermining the entirety of the officer's determination. § 1415(f)(3)(A). We do not construe § 1415 so narrowly. We consider a party to be "aggrieved by the findings and decision" of an ALJ when they articulate a challenge to the ALJ's basis for entry of a final administrative order.

### ii. Our Prior Caselaw

Construing § 1415 to preclude jurisdiction in this case would also call into question our holdings in *P.N.*, 442 F.3d at 848 and *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260 (3d Cir. 2014). Instead, we take this opportunity to clarify implicit premises latent in our IDEA jurisprudence. While neither case

---

[6] The dissent protests that Section 1415 only confers jurisdiction where an ALJ issues a "due-process-hearing decision." Dissent at 4. Section 1415(i), however, does not refer to a "due-process-hearing decision," but rather to the "findings and decision made under subsection(f)," which go beyond the due process hearing itself.

12

squarely addresses the jurisdictional question presented in this case, they jointly suggest that jurisdiction arises under § 1415 when an administrative order disposing of an IDEA claim is the subject of a complaint.

In *P.N.*, we considered whether prevailing party status could attach to plaintiffs whose administrative proceedings in an IDEA dispute were terminated by a settlement agreement embodied in a consent order. *See* 442 F.3d at 850-52. The parties in that case entered into two separate settlement agreements addressing plaintiffs' complaint after P.N. was suspended from school following an outburst. *See id.* at 850-51. Each agreement was reflected in a consent order, the second indicating that the order was a final decision of the ALJ. *See id.* at 851. Before the district court, plaintiffs sought attorney's fees as a prevailing party pursuant to the IDEA. *See id.* The district court entered judgment in favor of the school district and denied attorney's fees. *See id.* at 852.

We concluded that an administrative consent order could satisfy the requirements imposed by *Buckhannon Bd. and Home Care, Inc. v. West Va. Dept. of Health and Hum. Res.*, 532 U.S. 598 (2001), for the recovery of attorney's fees in a federally created action. *See id.* at 854-55.[7] We reasoned that

[7] A "stipulated settlement" confers prevailing party status when it "(1) contain[s] mandatory language, (2) [is] entitled 'Order,' (3) [bears] the signature of the District Court judge, not the parties' counsel, and (4) provide[s] for judicial enforcement." *John T. ex rel. Paul T. v. Del. Cnty. Intermediate Unit*, 318 F.3d 545, 558 (3d Cir. 2003) (citing *Truesdell v. Phila. Hous. Auth.*, 290 F.3d 159, 165 (3d Cir. 2002)). While administrative orders incorporating settlements do not bear a District Court judge's signature, we explained in

13

"settlement of an administrative proceeding is the equivalent of an administrative decree on the merits where, as here, the parties' obligation to comply with the terms of the settlement agreement has been made part of the order of dismissal." *Id.* at 854. We recognized that the settlement agreement in that case was accordingly "judicially enforceable" because the "consent orders entered . . . were enforceable through an action under 42 U.S.C. § 1983 . . . ." *Id.*

Our statement that there was an avenue for judicial enforcement pursuant to § 1983 confirmed the district court's conclusion in that case that the consent order was enforceable under § 1983, and comported with our then-existing caselaw. *See W.B. v. Matula*, 67 F.3d 484, 494 (3d Cir. 1995). Subsequently, in *A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791, 803 (3d Cir. 2007) (en banc), we held that § 1983 was not an appropriate vehicle for vindicating rights guaranteed by the IDEA, partially abrogating *W.B.*

Then, in *D.E.*, we considered a federal court's ability to hear an IDEA appeal from a party that received a favorable administrative determination ignored by the school district. 765 F.3d at 274. Plaintiffs in that case obtained an administrative order following a due process hearing directing the school district to remediate its failure to provide D.E. a FAPE. *See id.* at 266-67. No administrative appeal was taken and the district's failure to comply with the ALJ's final order was the basis for plaintiffs' action for compensatory damages in the district court. *See id.* at 267. The district court dismissed

---

*P.N.* that "administrative *imprimatur*" was sufficient to confer prevailing party status under *Buckhannon*. 442 F.3d at 854 (citing *A.R. ex rel R.V. v. New York City Dept. of Educ.*, 407 F.3d 65, 76 (2d Cir. 2005)).

14

the IDEA claims on the grounds that, among other things, there was a failure of the parents to administratively exhaust those claims. *See id.*

We held that parties in plaintiffs' position "may properly pursue such claims in [federal] court." *Id.* at 278. Our holding was premised on our determination that plaintiffs in that case, though victorious below, were "'aggrieved by the findings and decision' of the administrative proceedings," and accordingly were entitled to "bring a civil action in state or federal court" to challenge the determination pursuant to § 1415(i)(2), because no other options for enforcement of the order were available to them. *Id.* at 276.

*D.E.* acknowledges a right to enforce administrative orders in IDEA cases in a district court. *P.N.* acknowledges that an administrative consent order may satisfy the IDEA's attorney fees' shifting provision if it is judicially enforceable. While our holding in *P.N.* reflected that such orders were judicially enforceable pursuant to § 1983, our subsequent case law clarifies that the appropriate statute under which enforcement should be sought by a victorious party in an administrative proceeding is § 1415. *See D.E.*, 765 F.3d at 278; *A.W.*, 486 F.3d at 803.

Unlike *D.E.*, where the jurisdictional inquiry was complicated by whether a party was "aggrieved" within the meaning of § 1415(i)(2) when they, for lack of a better term, won below, the facts here present no such quandary. If a party that prevailed before an ALJ may enforce a settlement agreement embodied in an administrative consent order as an "aggrieved party" under § 1415(i)(2), then a party seeking to challenge such an order as improperly entered must likewise be able to bring their challenge in federal court.

To the extent that Appellants' complaint challenges the basis for the ALJ's final order, we hold that it is an appealable order from which jurisdiction is properly taken in the District Court pursuant to 20 U.S.C § 1415(i) and 28 U.S.C. § 1331. To the extent that the remainder of Appellants' claims address the validity of the settlement agreement on the basis of New Jersey contract law, we leave it to the District Court in the exercise of its discretion to consider in the first instance whether supplemental jurisdiction is appropriately taken to resolve that matter pursuant to 28 U.S.C. § 1367.

## IV.  CONCLUSION

For the foregoing reasons, we will reverse the order of the District Court and remand the matter for consideration of the merits consistent with this opinion.

*G.W. v. Ringwood Board of Education*, No. 20-3552
PHIPPS, *Circuit Judge*, dissenting

The Individuals with Disabilities Education Act ('IDEA') provides certain discrete causes of action that may be litigated in federal court. The statute, however, does not create a federal cause of action to challenge every decision related to a disabled child's education. Yet today the Majority Opinion announces an expansive new principle, akin to a final-order rule for decisions by state hearing officers: federal courts have jurisdiction over any ruling by a state hearing officer that resolves a formal complaint against a school district for violating the IDEA. Applying that principle, the Majority Opinion concludes that parents of a child with disabilities may challenge in federal court a state hearing officer's decision that they voluntarily entered a settlement agreement with a school district relating to their child's education. I respectfully dissent from that novel outcome, which no other court has ever reached, because the parents' claim sounds in state law and the text of the IDEA contains no clear statement authorizing such a federal cause of action. Thus, while the parents may seek to redress their grievance in state court, they may not proceed in federal court.

The IDEA does not confer broad power on federal courts to micromanage every dispute related to the education of children with disabilities. And nowhere does the statute provide a federal cause of action to challenge the voluntariness of a settlement agreement. Rather, the IDEA provides five discrete causes of action that may be brought in federal court.[1] Four of

---

[1] Those five causes of action are (1) to enforce a settlement agreement resolved through the mediation process, *see*

those are not relevant to this case.[2]  To permit this suit, the Majority Opinion relies on the remaining cause of action, which permits challenges to certain decisions and findings made by a hearing officer following a due process hearing.  *See* 20 U.S.C. § 1415(f)(3)(E), (i)(2)(A).

A due process hearing is an impartial state- or local-level administrative adjudicatory process designed to resolve a due process complaint.  *See* 20 U.S.C. § 1415(f)(1)(A); 34 C.F.R. § 300.511(a); *see generally* 2 Ronna Greff Schneider & Phyllis

20 U.S.C. § 1415(e)(2)(F)(iii); (2) to enforce a settlement agreement entered at a resolution meeting before the due process hearing, *see id.* § 1415(f)(1)(B)(iii)(II); (3) to challenge a hearing officer's findings and decision related to a child's placement in an alternative educational setting, *see id.* § 1415(i)(2)(A), (k); (4) to challenge the findings and decision by a state educational agency on administrative appeal, *see id. see id.* § 1415(i)(2)(A), (i)(1)(A)–(B); and (5) to challenge a hearing officer's findings and decision from a due process hearing; *see id.* § 1415(i)(2)(A), (f).  The IDEA also authorizes reasonable attorney's fees for prevailing parties in the causes of action that it creates.  *See id.* § 1415(i)(3)(B).

[2] This case does not qualify for first two causes of action because it seeks to set aside a settlement agreement, not to enforce one.  It likewise does not implicate the third cause of action because the parents do not challenge findings and decisions regarding placement in an alternative educational setting.  Nor does this case implicate the fourth causes of action for administrative appeals as New Jersey provides only one tier of administrative review, *see* N.J. Admin. Code § 6A:14-2.7(v).

E. Brown, *Education Law: First Amendment, Due Process and Discrimination Litigation* § 6:9 (Oct. 2019 update); Charles J. Russo & Ralph D. Mawdsley, *Education Law* § 5.07 (2021). Through such a complaint, a person may claim that a school district violated its obligations regarding "the identification, evaluation, or educational placement" of a child with disabilities or otherwise failed to provide a free appropriate public education to that child. 20 U.S.C. § 1415(b)(6)(A); *see* 34 C.F.R. § 300.507(a); *see also* 20 U.S.C. § 1415(b)(7)(A), (f)(1)(A); *Batchelor v. Rose Tree Media Sch. Dist.*, 759 F.3d 266, 272 (3d Cir. 2014). Only the grievances presented in the due process complaint may be adjudicated at a due process hearing. *See* 20 U.S.C. § 1415(f)(3)(B); *see also* 34 C.F.R. § 300.511(d).

A hearing officer may resolve a due process hearing in one of two ways. The first is through a decision made on "substantive grounds" as to "whether the child received a free appropriate public education." 20 U.S.C. § 1415(f)(3)(E)(i); *see also* 34 C.F.R. § 300.513(a)(1). Alternatively, the hearing officer may issue a decision based on findings of "procedural inadequacies" that "impeded the child's right to a free appropriate public education," "significantly impeded the parents' opportunity to participate in the decisionmaking process" for their child's education, or "caused a deprivation of educational benefits." 20 U.S.C. § 1415(f)(3)(E)(ii); *see also* 34 C.F.R. § 300.513(a)(2). Only after a hearing officer issues a decision resolving a due process hearing through one of those two means does such decision become reviewable in federal court. *See* 20 U.S.C. § 1415(f)(3)(E)(i), (ii); *see also* *M.M. v. Lafayette Sch. Dist.*, 681 F.3d 1082, 1090 (9th Cir. 2012) (upholding the dismissal of an action challenging an

3

interlocutory ruling as premature since the action was commenced before a due process hearing had been completed).

Under these principles, the parents cannot bring a federal cause of action. The hearing officer did not conduct a due process hearing, and thus could not have issued a due-process-hearing decision. Instead, the hearing officer oversaw settlement discussions. Through that process, the parties signed a settlement agreement, which the hearing officer determined was voluntary. But that decision was not made on substantive grounds related to the child's education. Likewise, that decision was not premised on a procedural inadequacy related to the provision of educational services or benefits. Rather, the hearing officer's decision was based on the voluntariness of the parents' consent. Thus, the IDEA does not create a federal cause of action to challenge the hearing officer's decision.

The Majority Opinion reaches a different conclusion. In doing so, it looks to caselaw for guidance, but it admits that precedent does not "squarely address[ ] the jurisdictional question presented in this case." Its best support comes from two cases, *P.N. v. Clementon Board of Education*, 442 F.3d 848 (3d Cir. 2006), and *D.E. v. Central Dauphin School District*, 765 F.3d 260 (3d Cir. 2014). Reading those together, the Majority Opinion discerns an "implicit premise[ ] latent in our IDEA jurisprudence," which is that "jurisdiction arises under § 1415 when an administrative order disposing of an IDEA claim is the subject of a complaint." In essence, the Majority Opinion reduces the textual limitations on the IDEA's due-process-hearing cause of action to a final-order requirement, similar to the one found in 28 U.S.C. § 1291, so

4

that *any* final order of a hearing officer may be disputed in federal court.

That result has no grounding in statutory text. Yet, as Spending Clause legislation, the IDEA can impose liability only through a clear statement in legislation. *See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy*, 548 U.S. 291, 295–96 (2006); *see generally Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981) (requiring Congress to "speak with a clear voice" so that it "unambiguously" states any "condition on the grant of federal moneys" in statutory text). The Majority Opinion is unable to identify a clear statement in the IDEA that subjects school districts to suit in federal court for *any* final decision issued by a hearing officer at (or outside of) a due process hearing. The text of the IDEA similarly lacks a clear statement subjecting school districts to suit in federal court based on a hearing officer's allegedly mistaken conclusion regarding the voluntariness of a settlement agreement.

To support its outcome, the Majority Opinion references this Circuit's en banc holding that the IDEA creates a comprehensive remedial scheme. *See A.W. v. Jersey City Pub. Schs.*, 486 F.3d 791 (3d Cir. 2007) (en banc). But that does not mean that the IDEA permits every remedy conceivably needed to redress its potential misadministration. To the contrary, after concluding that the IDEA created a comprehensive remedial scheme, this Circuit foreclosed claims that were not grounded in the IDEA's plain text. *See id.* at 802–03 (disallowing § 1983 claims premised on violations of the IDEA because the IDEA provides a comprehensive remedial scheme). The same principle operates here: the IDEA is comprehensive and remedial, but not boundless, and the

5

omission of a specific cause of action indicates that Congress did not intend such a claim. *See Wilkie v. Robbins*, 551 U.S. 537, 562 (2007) ("'Congress is in a far better position than a court to evaluate the impact of a new species of litigation' against those who act on the public's behalf." (quoting *Bush v. Lucas*, 462 U.S. 367, 389 (1983))).

Under these circumstances, without a federal cause of action, the parents may not proceed in federal court. The IDEA confers federal jurisdiction only for the causes of action that it creates. *See* 20 U.S.C. § 1415(i)(3)(A) ("The district courts of the United States shall have jurisdiction of actions brought under this section without regard to the amount in controversy."). Nor can the parents proceed under the federal-question statute. *See* 28 U.S.C. § 1331 (conferring jurisdiction on federal courts over "all civil actions arising under the Constitution, laws, or treaties of the United States"). To do so without a federal cause of action, the parents would need to demonstrate that their "state-law claims . . . implicate significant federal issues." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). But they cannot make such a showing for their claim that the settlement agreement "was procured through duress and coercion" and lacked valid consent. Compl., at 11–12 ¶¶ 88–90 (JA39–40). That is so because duress, coercion, and invalid consent are classic state-law defenses to contract formation.[3] And in the

---

[3] *See In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 522 (3d Cir. 2019) (noting that duress is a "generally applicable" contract defense (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)); *Agathos v. Starlite Motel*, 977 F.2d 1500, 1506 (3d Cir. 1992) (recognizing coercion as a defense that "ordinarily makes a

6

absence of a federal cause of action, federal-question jurisdiction does not exist when state law, as opposed to federal law, "furnishes the substantive rules of decision." *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 378 (2012).

For these reasons, the parents may bring their claim in state court, but they do not have a federal cause of action, and federal courts do not have jurisdiction over their state-law claim.

---

contract voidable"); *see also* 28 *Williston on Contracts* § 71:1 (4th ed. Nov. 2021 update) (discussing the historical origins of duress and coercion as means of voiding contracts).

7