904 A.2d 747 (2006)
387 N.J. Super. 423
Cynthia TEETERS, Petitioner-Appellant,
v.
DIVISION OF YOUTH AND FAMILY SERVICES, Respondent-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued March 21, 2006.
Decided August 15, 2006.
Richard Gutman, Montclair, argued the cause for appellant.
Christian A. Arnold, Deputy Attorney General, argued the cause for respondent Division of Youth and Family Services (Zulima V. Farber, Attorney General, attorney; Andrea M. Silkowitz, Assistant Attorney General, of counsel; Mr. Arnold, on the brief).
Barry J. Roy, West Orange (Booker, Rabinowitz, Trenk, Lubetkin, Tully, DiPasquale *748 & Webster), attorney for the Government Records Council, relying on brief and argument of the Division of Youth and Family Services.
Before Judges KESTIN, HOENS and SELTZER.
The opinion of the court was delivered by
KESTIN, P.J.A.D.
Petitioner, Cynthia Teeters, appeals from a final decision of the Government Records Council (Council) denying an award for attorney's fees incurred in seeking access to certain public records via two complaints she filed under the Open Public Records Act (OPRA or the Act). The Council ruled that petitioner "was not a `prevailing party' and . . . not entitled to attorney's fees pursuant to OPRA." We reverse and remand.
The matter began with petitioner's complaint filed with the Division of Youth and Family Services (DYFS) against an adoption agency for having falsely advertised that it was licensed in New Jersey.[*] DYFS eventually determined that the adoption agency had violated the rules of its Bureau of Licensing (Bureau), and it reported the results of its investigation to petitioner in a letter dated October 11, 2000. In the meantime, petitioner had requested a copy of the investigatory report. After repeatedly responding that the report had not been completed but would be soon, DYFS eventually declined to release it. Petitioner filed two "Denial of Access" complaints with the Council, on July 29 and August 8, 2002, alleging separate requests to DYFS for the records on July 8 and July 29, 2002, and denials on July 17 and August 8, respectively.
The first complaint, filed pro se, described the record requested as "Documents from DYFS Bureau of Licensing file on the [adoption agency involved]." That complaint described the "[r]esponse to [the] request" as "saying that I would not receive documents until August 16. I was not given the reason for the delay. This is too long of a delay and as such I consider it to be a denial."
The second complaint, also filed pro se, described the record requested as "DYFS Bureau of Licensing investigation report first requested in a letter dated October 27, 2000." That complaint described the "[r]esponse to [that] request" as follows: "The records custodian has not responded to my request within the required 7 business days."
During the period, according to petitioner, on September 1, 2000, the Bureau had licensed the adoption agency involved and had issued certificates to it in March and September of 2001, and again in March, June and July of 2002. On August 5, 2002, the Bureau issued a Notice of Revocation of Certificate of Approval following a newspaper report entitled "From `Perverted' Web Sites To Child Adoption." On August 14, 2002, DYFS provided petitioner with what it represented as the entire file pertaining to the particular adoption agency, 496 pages of documents.
Subsequently, in a supplement to her denial-of-access complaints, petitioner, on October 16, 2002, through an attorney, asserted that portions of the file, including chronological lists, had been omitted with no expressed justification. In a formal response dated November 6, 2002, DYFS's *749 custodian of records stated that none of the documents described existed. Nevertheless, on December 11, 2002, DYFS produced a fourteen-page chronological list and some other missing documents. The additional disclosure fell short of full compliance with petitioner's requests, however.
On February 5 and 6, 2003, the Council's Executive Director made preliminary findings and recommendations regarding the two complaints. He determined that DYFS had failed to meet OPRA's requirements and that the records petitioner requested should be provided to her immediately subject to appropriate redaction in order to effect any expressed OPRA exception. He also concluded that petitioner "is a prevailing party, entitled to reasonable counsel fees." He reserved decision on the extent to which, if any, a "custodian penalty" should be assessed.
On February 13, 2003, the Council issued its interim decisions on both complaints, effective February 28, 2003. It "[d]eferred until [its] next meeting a decision on the issue of `prevailing party' status and the custodian penalty in this case.... [and] [o]rdered the custodian to provide comment" on some of the issues raised, to provide petitioner access to certain of the records sought, or to justify claims that they did not exist. In a letter response dated February 28, 2003, DYFS maintained that custodian penalties were not warranted and that petitioner was not a "prevailing party" entitled to attorney's fees under the Act. DYFS requested an evidentiary hearing.
On September 11, 2003, the Council referred petitioner's OPRA complaints to the Office of Administrative Law (OAL) for a contested-case hearing, see N.J.S.A. 52:14B-9, 10, on five specified questions, because, according to the Executive Director, "the Council was unable to make a determination as to access and other issues based on the Complainant and Custodian's responses." The Council, however, reserved to itself the determination whether petitioner "is a `prevailing party.'" The questions to be determined in the contested-case hearing were:
1. What records were provided in response to the request?
2. What records were not provided and whether these records were properly withheld?
3. Whether access to any portion of the OPRA request was not provided within the statutory time period and whether any delay in providing access was justified?
4. Whether a "knowing and willful" violation of OPRA occurred under the totality of the circumstances pursuant to N.J.S.A. 47:1A-11?
5. Identify all records or portions thereof that OAL awarded access.
On January 29, 2005, according to the Executive Director, "[t]he parties reached a `Partial Settlement Agreement' through the OAL[ ]" that stipulated:
1. there is no admission by DYFS of wrongdoing;
2. there [are] no findings of fact/or findings of fault by OAL;
3. all documents sought in the above requests were provided to the Complainant;
4. there are no remaining issues regarding access;
5. the Agreement does not resolve the issue of "prevailing party" pursuant to OPRA.
Petitioner's attorney separately acknowledged the parties' understanding that the Council was to determine the "attorney's fees issue." The settlement agreement specifically provided for further litigation of the issue, and recited: "This agreement *750 shall be governed by the laws of the State of New Jersey."
The matter then returned to the Council. The Executive Director reported his findings and recommendations on May 6, 2005. He framed the remaining issue as follows: "Whether [petitioner] is a `prevailing party' pursuant to N.J.S.A. 47:1A-6 and 47:1A-7(f) as a result of the settlement agreement reached by the parties concerning access?" He "recommend[ed] that the Council dismiss [the] case on the basis that [petitioner] was not a `prevailing party' and [her] Counsel is not entitled to attorney's fees pursuant to OPRA." In reaching this conclusion, the Executive Director referred to another case decided by the Council in which it had denied attorney's fees under N.J.S.A. 47:1A-6 and -7f after invoking the holding of Buckhannon Board and Care Home, Inc. v. West Virginia Department of Health and Human Resources, 532 U.S. 598, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001). The Executive Director stated that "no one `prevailed' by reason of the ALJ's decision or judgment" because
there was no "enforceable judgment on the merits" determined or "decided" by the Administrative Law Judge. OAL procedure requires that the "settlement" become the decision, however, the ALJ did not make any determination in this case.
In a May 12, 2005 final decision, the Council adopted "the entirety of [the Executive Director's] findings and recommendations" and "dismissed the case on the basis that [petitioner] was not a `prevailing party' and [her] Counsel is not entitled to attorney's fees pursuant to OPRA."
Although we are enjoined to accord respect to an agency's interpretation of the statute it is assigned to administer, see Matturri v. Board of Trustees, Judicial Retirement System, 173 N.J. 368, 381, 802 A.2d 496 (2002); New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 575, 384 A.2d 795 (1978), we are not bound by an agency's interpretation of law, see SSI Medical Services, Inc. v. Department of Human Services, 146 N.J. 614, 620-21, 685 A.2d 1 (1996); Mayflower Securities Co. v. Bureau of Securities, 64 N.J. 85, 93, 312 A.2d 497 (1973), any more than we are bound by the legal rulings of lower courts, see Manalapan Realty, L.P. v. Township Committee of Manalapan, 140 N.J. 366, 378, 658 A.2d 1230 (1995).
An interpretation of federal legislation by the United States Supreme Court is not binding upon a state court's interpretation of its own statutes. See In re Application of White, 18 N.J. 449, 453-54, 114 A.2d 261 (1955); see also Shepherd v. Hunterdon Developmental Ctr., 174 N.J. 1, 20-21, 803 A.2d 611 (2002); Rendine v. Pantzer, 141 N.J. 292, 333, 661 A.2d 1202 (1995); Grigoletti v. Ortho Pharm. Corp., 118 N.J. 89, 107, 570 A.2d 903 (1990). Of course, we are obliged to accord respect to the considered views of the federal courts, as we are to the courts of sister states, but in interpreting New Jersey law, we must give the greatest sway to our Legislature's intendments as they are illuminated by the language of the statute at issue, the public policies underpinning the statute, and such State law precedents as are available. See Alderiso v. Medical Ctr. of Ocean County, Inc., 167 N.J. 191, 201-02, 770 A.2d 275 (2001); Lesniak v. Budzash, 133 N.J. 1, 8, 626 A.2d 1073 (1993); Merin v. Maglaki, 126 N.J. 430, 436-37, 599 A.2d 1256 (1992). Naturally, a State agency is bound to follow the same approach. Cf. ibid.
In Baer v. Klagholz, 346 N.J.Super. 79, 786 A.2d 907 (App.Div.2001), certif. denied, 174 N.J. 193, 803 A.2d 1165 (2002), we recognized the binding nature of Buckhannon's approaches where the counsel fee provisions of federal statute were at issue. *751 We determined, however, that the claimants met the test for being a "`prevailing party' because they prevailed in their attack upon eight of the sixty regulations they challenged." Id. at 81-82, 786 A.2d 907. See also P.N. v. Clementon Bd. of Ed., 442 F.3d 848 (3d Cir.2006)(determining that federal law requirements for classifying the claimant as a prevailing party had been met); but see John T. v. Delaware County Intermediate Unit, 318 F.3d 545, 558 (3d Cir.2003)(denying prevailing party status after analyzing all pertinent factors). In Baer, supra, 346 N.J.Super. at 83, 786 A.2d 907, we noted that Buckhannon had rejected the "catalyst theory" as a basis for an award of counsel fees under the two federal statutes there involved. See Buckhannon, supra, 532 U.S. at 610, 121 S.Ct. at 1843, 149 L.Ed.2d at 866-67. We stated, nevertheless, that "[w]e [did] not read Buckhannon as changing the criteria for an award which can be made when the claimant is partially successful." Baer, supra, 346 N.J.Super. at 83, 786 A.2d 907.
Here, we are called upon to determine whether petitioner can be deemed a prevailing party purely as a matter of State law. We must determine, under State law, if a settlement during litigation is any different from a judgment for the purpose of determining whether the claimant has prevailed. In approaching the question, it may be useful to consider how the "catalyst theory" applies in this State notwithstanding its rejection in Buckhannon, i.e., whether that concept has independent provenance under New Jersey law.
Chief Justice Rehnquist, writing for five members of the Court in Buckhannon, supra, defined the "catalyst theory" as "posit[ing] that a plaintiff is a `prevailing party' if it achieves the desired result because the lawsuit brought about a voluntary change in the defendant's conduct." 532 U.S. at 601, 121 S.Ct. at 1838, 149 L.Ed.2d at 861. The Court went on to note that "most Courts of Appeals recognize the `catalyst theory,'" although, in the case at hand, it had been rejected by the Fourth Circuit Court of Appeals. Id. at 601-02, 121 S.Ct. at 1838-39, 149 L.Ed.2d at 861.
The "prevailing party" rubric, so central to the Court's decision in Buckhannon, supra, is a term found in "[n]umerous federal statutes," 532 U.S. at 600, 121 S.Ct. at 1838, 149 L.Ed.2d at 860, including the Fair Housing Amendments Act of 1988 (FHAA) and the Americans With Disabilities Act of 1990(ADA) at issue there. The pertinent clause of the FHAA provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee and costs." 42 U.S.C. § 3613(c)(2). The ADA provision is identical except that it adds "including litigation expenses" to the factors that may be reflected in an award. 42 U.S.C. § 12205.
The New Jersey statutes have a different tone and flavor. N.J.S.A. 47:1A-6 and 47:1A-7f each provide: "A requestor who prevails in any proceeding shall be entitled to a reasonable attorney's fee." The difference in language suggests a difference in result.
The majority opinion in Buckhannon stated that the "catalyst theory" is flawed as a rule of entitlement because "[i]t allows an award where there is no judicially sanctioned change in the legal relationship of the parties." Buckhannon, supra, 532 U.S. at 605, 121 S.Ct. at 1840, 149 L.Ed.2d at 863. "Our precedents . . . counsel against holding that the term `prevailing party' authorizes an award of attorney's fees without a corresponding alteration in the legal relationship of the parties." Ibid. This view of federal precedent has no direct bearing upon the meaning of our State statutes, especially to the extent the *752 federal rule embodies a sense that settlements, or even the results of proceedings before administrative agencies, are not reliable measures of success. See, e.g., John T., supra, 318 F.3d at 560-61.
Both the language of our statutes and the terms of court decisions in this State dealing with the issue of counsel fee entitlements support a more indulgent view of petitioner's claim for an attorney's fee award than was allowed by the majority in Buckhannon, supra, based, in major part, upon "the clear legislative language" of the federal statutes. 532 U.S. at 610, 121 S.Ct. at 1843, 149 L.Ed.2d at 866-67. Among other considerations, the reference in our statutes to a claimant who prevails "in any proceeding" and the use of the mandatory "shall be entitled" suggest the existence of different normative standards under State law than exist under federal law. Even a cursory reference to the history of approaches to counsel fee entitlements under State law demonstrates a difference in policy orientation that calls for a different result.
In Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 771 A.2d 1194 (2001), for example, the Supreme Court of New Jersey articulated a two-part test for determining, for fee-shifting purposes, whether a party had prevailed in a legal malpractice case. The Court said:
The first prong requires that the litigant seeking fees establish that the "`lawsuit was causally related to securing the relief obtained; a fee award is justified if [the party's] efforts are a "necessary and important" factor in obtaining the relief.'" * * * That prong requires the party seeking fees to demonstrate a factual nexus between the pleading and the relief ultimately recovered. * * *
The second prong involves a factual and legal determination, requiring the party seeking fees to prove that "`the relief granted has some basis in law.'" * * * The party seeking fees need not obtain all relief sought, but there must be a resolution of some dispute that affected the defendant's behavior towards the prevailing plaintiff. * * *
[Id. at 444, 771 A.2d 1194 (citations omitted).]
Both of these criteria, which can be seen as invoking the "catalyst theory," have been satisfied in the case at hand. Petitioner engaged in reasonable efforts to pursue her access rights to the records in question. She sought attorney assistance only after her self-filed complaints and personal efforts were unavailing. With that assistance, she achieved a favorable result that reflected an alteration of position and behavior on the Division's part.
Warrington v. Village Supermarket, Inc., 328 N.J.Super. 410, 746 A.2d 61 (App. Div.2000), predated Buckhannon. It involved two State statutes, the Handicapped Access Law, N.J.S.A. 52:32-4 to 10, and the Law Against Discrimination (LAD), N.J.S.A. 10:5-1 to -42, as well as the federal ADA, 42 U.S.C. §§ 12101 to 12213. We held:
A plaintiff is considered a prevailing party "when actual relief on the merits of [the] claim materially alters the relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff."
[Id. at 420, 746 A.2d 61 (quoting Farrar v. Hobby, 506 U.S. 103, 111-12, 113 S.Ct. 566, 573, 121 L.Ed.2d 494, 503 (1992)).]
Whether the resolution of the matter involved a judicial decree, a quasi-judicial determination, or a settlement was not a factor.
The sources of the tests in Packard-Bamberger and Warrington were both decisional and statutory, with textual roots very different from those informing Buckhannon. See also Tarr v. Ciasulli, 181 N.J. 70, 86-87, 853 A.2d 921 (2004)("[A] *753 plaintiff who is awarded some affirmative relief by way of an enforceable judgment. . . or other comparable relief through a settlement or consent decree is a prevailing party under . . . the LAD."). In addition to the differing textual bases found in State law, we are mindful of the strong public policy of this State favoring settlements. See Nolan v. Lee Ho, 120 N.J. 465, 472, 577 A.2d 143 (1990)(quoting Jannarone v. W.T. Co., 65 N.J.Super. 472, 476, 168 A.2d 72 (App.Div.), certif. denied, 35 N.J. 61, 171 A.2d 147 (1961)); Judson v. Peoples Bank and Trust Co., 25 N.J. 17, 35, 134 A.2d 761 (1957). A result that places a claimant in a distinctly worse position economically if she settles than she would be by carrying the matter to a successful litigation conclusion disserves that policy. See Buckhannon, supra, 532 U.S. at 639, 121 S.Ct. at 1859, 149 L.Ed.2d at 885 (Ginsburg, J., dissenting).
In their "partial settlement agreement," the parties here had agreed "that all documents sought by [petitioner] . . . on July 8, 2002 and July 29, 2002, respectively[,] have been produced by the Division." That settlement result had clearly been achieved as a consequence of the litigation. The parties also agreed that petitioner would "no longer pursue sanctions and/or penalties under OPRA against the Division, or any of its employees or agents[ ] for knowing and willful violation(s) of OPRA" with respect to those requests, and that a "letter of apology" that had been issued to petitioner by the chief of the Bureau would "serve as resolution of any claim of sanction and/or penalty against the Division, its employees or agents, with respect to these matters." Despite the additional stipulation that "[t]his Agreement does not constitute an admission by the Division that any of the actions taken in response to [petitioner's] OPRA requests constitute[d] knowing and willful violations of OPRA[,]" it seems obvious that this very proceeding "modif[ied] [DYFS's] behavior in a way that directly benefitted [petitioner]." Warrington, supra, 328 N.J.Super. at 420, 746 A.2d 61.
It is also clear that the repeal of N.J.S.A. 47:1A-4, shortly after N.J.S.A. 47:1A-6 and -7 were adopted, was a renunciation of a narrower attorney's fees rule (i.e., embodying a prerequisite for a court order requiring disclosure, a limitation to $500, and a discretionary authority in the trial court), in favor of the broader, mandatory standard of entitlement based on the sole test of "prevail[ing] in any proceeding," and subject to a rule of reasonableness with no expressed monetary limitation.
Applying the language of our current statutes in the light of this State's public policies regarding fee-shifting as articulated in case law, we hold that, under the laws of New Jersey, petitioner was a "prevailing party" entitled to an award of a "reasonable attorney's fee." N.J.S.A. 47:1A-6, -7f. We are constrained to observe that, according to the analysis employed by the Third Circuit Court of Appeals in P.N., supra, 442 F.3d 848, even under federal standards applied since Buckhannon, given all the facts and considering all procedural events that transpired, petitioner would likely have been deemed a "prevailing party." She "received all that [she] sought." Id. at 856. She "achieved success on significant issues[.]" Id. at 857. See also North Bergen Rex Transp., Inc. v. Trailer Leasing Co., 158 N.J. 561, 570-74, 730 A.2d 843 (1999); Singer v. State, 95 N.J. 487, 496, 472 A.2d 138, cert. denied, 469 U.S. 832, 105 S.Ct. 121, 83 L.Ed.2d 64 (1984).
Reversed and remanded for determination of reasonable counsel fees in favor of petitioner.
NOTES
[*] The record on appeal is incomplete in that it lacks some documents, including those generated in the underlying matter. Consequently, our factual recitation is based, in part, upon the statements of facts in the parties' briefs to the extent the scenarios presented are consistent with each other or undisputed.