NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0044-20

UNDERWOOD PROPERTIES,
LLC,

      Plaintiff-Appellant/
Cross-Respondent,

v.

CITY OF HACKENSACK and
DEBORAH KARLSSON, in
her professional capacity as
Records Custodian for the City
of Hackensack,

      Defendants-Respondents/
Cross-Appellants.

> **APPROVED FOR PUBLICATION**
>
> **January 24, 2022**
>
> **APPELLATE DIVISION**

Argued January 6, 2022 – Decided January 24, 2022

Before Judges Alvarez, Mawla, and Mitterhoff.

On appeal from the Superior Court of New Jersey, Law
Division, Bergen County, Docket No. L-7980-19.

Leonard E. Seaman argued the cause for
appellant/cross-respondent (Law Offices of Richard
Malagiere, PC, attorneys; Richard Malagiere, of
counsel; Leonard E. Seaman, of counsel and on the
briefs).

Steven W. Kleinman argued the cause for
respondents/cross-appellants (Cleary, Giacobbe,

Alfieri, Jacobs, LLC, attorneys; Steven W. Kleinman, of counsel and on the briefs).

The opinion of the court was delivered by

MAWLA, J.A.D.

Plaintiff Underwood Properties, LLC appeals from a July 24, 2020 order, denying its application under the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, to compel defendants City of Hackensack and its records custodian Deborah Karlsson to produce privileged documents, and awarding plaintiff counsel fees. Defendants cross-appeal and also challenge the counsel fee award. We affirm in all respects.

The dispute underlying the OPRA litigation regards the Hackensack Planning Board's zoning determinations and ordinances adopted in the City's redevelopment plan, which are the subject of two separate lawsuits involving these parties. On August 12, 2019, plaintiff's counsel submitted two OPRA requests "from Richard Malagiere." The first sought "[a]ny and all [emails] relating to official business of the City of Hackensack, such as to constitute a government record, to or from [the deputy mayor's personal email address] from November 2017 through present[.]" The second sought "[t]ext messages, [emails], and any other . . . correspondence" involving nine city officials and the deputy mayor, about a particular planning board application and subsequent

resolution and ordinance for a two-year time period.  Karlsson denied the first, calling it invalid because it failed "to identify the content and/or subject of the" emails and would require the City to undertake an open-ended search.  She requested an extension to respond to the second.  On August 28, 2019, plaintiff's counsel submitted a third request seeking communications to and from the deputy mayor's personal email account, narrowing the search terms to specific words.

Karlsson provided seventeen pages of records in response to the second request and thirteen pages for the third.  She also submitted a Vaughn index[1] explaining why certain records were withheld or redacted as privileged.  However, Karlsson declined to produce records responsive to seven search terms generating over 400 emails, asserting "it is the City's position that any of the above search terms producing more than 400 [emails] are too general for the City to review" and would constitute an open-ended records search.

---

[1] "[A] Vaughn index . . . is a detailed affidavit [submitted by the withholding government entity] correlating the withheld documents with the claimed exemptions.  To pass muster, a Vaughn index must consist of one comprehensive document, adequately describe each withheld document or redaction, state the exemption claimed, and explain why each exemption applies."  Cozen O'Connor v. U.S. Dep't of Treasury, 570 F. Supp. 2d 749, 765 (E.D. Pa. 2008).

A-0044-20

Plaintiff's counsel filed a complaint in lieu of prerogative writs and an order to show cause alleging defendants violated OPRA by: "(1) denying access to records for search terms generating over 400 responsive [emails], and (2) improperly asserting privileges and exemptions to withhold four categories of [emails] responsive to the 'approved' search terms, when those [emails] should have been provided along with the rest of [d]efendants' partial production . . . ." Plaintiff sought in camera review of the privileged documents. Defendants opposed the emergent application, arguing plaintiff's counsel lacked standing to file the OPRA complaint, could not be awarded attorney's fees, and the requests were properly denied as overly broad.

On January 9, 2020, Judge Bonnie J. Mizdol ordered defendants to produce certain documents directly to plaintiff and to provide the privileged documents—namely, emails between the deputy mayor and four city officials—to the court. On February 13, 2020, following her in camera review, the judge ordered defendant to produce three of the four categories of emails, but found one category "wholly exempted from production under the deliberative process and attorney-client privilege[.]" Plaintiff moved for $14,560.20 in counsel fees, supported by an affidavit of services pursuant to N.J.S.A. 47:1A-6 and RPC 1.5(a).

A-0044-20

Defendants moved for reconsideration of the order requiring production of the privileged materials. The judge granted reconsideration and reclassified all categories of emails she reviewed in camera as privileged. She denied plaintiff's request for counsel fees associated with the documents she reviewed in camera.

In May 2020, plaintiff moved to compel production of the documents ordered to be produced in January, and again sought counsel fees. Defendants withheld a portion of the documents on grounds of privilege. Additionally, they argued plaintiff lacked standing to seek counsel fees because the OPRA request was submitted in the name of Malagiere, plaintiff's attorney. The judge ordered defendants to produce the disputed records for in camera review.

Thereafter, the judge entered the July order, which is the subject of these appeals, accompanied by a detailed forty-two-page written opinion. She concluded nine of the ten documents withheld by defendants were protected from disclosure by the deliberative process privilege and beyond the scope of plaintiff's request; the tenth document was protected by the attorney-client privilege.

Acknowledging that OPRA standing is not a "straightforward" issue, the judge noted N.J.S.A. 47:1A-6 states: "'A person who is denied access to a

government record by the custodian of the record, at the option of the requestor, may institute a proceeding to challenge the custodian's decision,' and that '[t]he right to institute any proceeding under this section shall be solely that of the requestor.'" (alteration in original). However, she concluded plaintiff had standing because plaintiff's counsel "has the power to act under implied authority to handle matters on behalf of his client as long as he is given consent."

The judge also noted "the Government Records Council has addressed this particular situation by way of its Denial of Access complaint form. That form specifically states: 'If you are an attorney who requested records and are filing this complaint on behalf of a client, please state the client's name.'" She concluded "it is more than apparent here that an attorney may request documents on behalf of a client and subsequently file suit under the client's name." She concluded plaintiff could seek fees because plaintiff's counsel filed the OPRA request on behalf of his client and within the scope of his representation.

The judge observed her January 2020 order

> clarified the records that [p]laintiff was searching for, it also narrowed the scope of the original request . . . . Despite this narrowing, [d]efendants turned over 831 pages of records that had not been previously produced pursuant to the August 28 request. Moreover, with respect to the original request, the court finds it facially apparent that [d]efendants' imposed limit of 400 responsive hits was arbitrary and capricious, especially

6

in light of the fact that [one search term] produced 401 responsive records.

Thus, "the 831 pages of records would not have been effected[] but for [p]laintiff's filing of suit in this case . . . and that [p]laintiff's success is limited here to only the records that [d]efendants initially produced . . . pursuant to the court's January . . . order."

The judge performed a lodestar analysis and addressed each RPC 1.5(a) factor. At the outset, she noted plaintiff's counsel billed in quarter hour increments and modified it to "the more widely-accepted six-minute billing increment." The judge analyzed and reduced certain billing entries she found excessive and concluded the remaining factors either favored an award of fees or did not militate against it. Hence, "only the portion of attorneys' fees and costs attributable to litigation of the original [order to show cause]" were compensable because "no subsequent litigation has resulted in further production of documents" and the purpose of the OPRA request was not vindicated.

The judge found plaintiff's challenge to the 346-page Vaughn index caused defendants to produce thirty-five pages and noted each page of the index "addresses three entries on average, [and] the court extrapolates that approximately 3,633 pages, representing approximately 1,038 documents [346

x 3=1,038], were withheld from production." Therefore, she concluded "less than [twenty percent] of the documents originally sought were actually produced." The judge awarded plaintiff $3,750, or roughly one-half of the lodestar amount.

I.

Our review of a trial court's interpretation of OPRA is de novo. See O'Boyle v. Borough of Longport, 426 N.J. Super. 1, 8 (App. Div. 2012). "Findings of fact, however, are reviewed deferentially." Ibid. (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)).

"[A] reviewing court will disturb a trial court's award of counsel fees 'only on the rarest of occasions, and then only because of a clear abuse of discretion.'" Litton Indus., Inc. v. IMO Indus., Inc., 200 N.J. 372, 386 (2009) (quoting Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001)). This is because a "trial court [is] in the best position to weigh the equities and arguments of the parties . . . ." Packard-Bamberger & Co., 167 N.J. at 447. We reverse only if the award is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

A-0044-20

## II.

On appeal, plaintiff argues the judge erred by not releasing an email on grounds of attorney-client privilege. Plaintiff contends defendants waived the privilege by including a third party, the City's financial advisor, on the email. Plaintiff also challenges the judge's calculation of counsel fees, alleging that she considered "irrelevant and inappropriate factors" and should not have relied on the number of documents produced to reduce the lodestar because many of plaintiff's expenses were litigation costs rather than time billed. Plaintiff also asserts the judge incorrectly concluded OPRA was not vindicated, yet the lawsuit yielded additional documents.

On cross-appeal, defendants argue the judge should not have awarded counsel fees because plaintiff did not prevail or demonstrate the documents were released because of the lawsuit. Defendants also repeat their claim plaintiff did not have standing to bring suit for an OPRA request it did not file. Defendants urge us to consider "establish[ing] the standard that if an attorney is filing an OPRA request on behalf of a client, it must clearly disclose that fact to the custodian of records, or if the response proceeds to litigation the attorney must be deemed the 'requestor.'"

<u>Standing</u>

We affirm Judge Mizdol's ruling on standing for the reasons expressed in her opinion.  N.J.S.A. 47:1A-6 states:

> A person who is denied access to a government record by the custodian of the record, at the option of the requestor, may:
>
> institute a proceeding to challenge the custodian's decision by filing an action in Superior Court . . . .
>
>      . . . .
>
> The right to institute any proceeding under this section shall be solely that of the requestor.

Plaintiff's counsel filed the OPRA request on behalf of his client. Defendants' claim counsel did not have authority to file the OPRA requests or the subsequent suit after defendants denied the requests for records is unsupported by the record.  Counsel sought the records to further the underlying litigation involving the same parties and counsel; therefore, counsel's role in making the request was no mystery.  This argument lacks merit.  <u>See</u> <u>R.</u> 2:11-3(e)(1)(E).

Furthermore, "OPRA is to be construed broadly to achieve the Legislature's over-arching goal of making public records freely available[.]" <u>Scheeler v. Atl. Cnty. Mun. Joint Ins. Fund</u>, 454 N.J. Super. 621, 625 (App. Div.

2018). Moreover, "New Jersey courts always have employed 'liberal rules of standing.'" CFG Health Sys., LLC v. Cnty. of Hudson, 413 N.J. Super. 306, 314 (App. Div. 2010) (quoting Jen Elec., Inc. v. Cnty. of Essex, 197 N.J. 627, 645 (2009)). For these reasons, we decline to adopt defendants' literal reading of N.J.S.A. 47:1A-6.

### Attorney-Client Privilege

OPRA declares it is "the public policy of this State that: government records shall be readily accessible for inspection . . . by the citizens of this State, with certain exceptions, for the protection of the public interest[.]" N.J.S.A. 47:1A-1. One exception is the attorney-client privilege. N.J.S.A. 47:1A-1.1. In pertinent part, the attorney-client privilege, provides "communications between a lawyer and his client in the course of that relationship and in professional confidence, are privileged. . . ." N.J.S.A. 2A:84A-20(1); N.J.R.E. 504(1).

The privilege "does not attach to a communication knowingly made within the hearing of any person whose presence nullifies the privilege. . . . [T]he privilege protects only those communications expected or intended to be confidential." O'Boyle v. Borough of Longport, 218 N.J. 168, 185 (2014) (citing N.J.R.E. 504(3). The privilege is not limited to legal advice but extends to

11

"consultations with third parties whose presence and advice are necessary to the legal representation." Ibid.

We have explained the common interest exception and held a communication with a third party may still be protected under the attorney client privilege "if '(1) the disclosure is made due to actual or anticipated litigation; (2) for the purposes of furthering a common interest; and (3) the disclosure is made in a manner not inconsistent with maintaining confidentiality against adverse parties.'" Laporta v. Gloucester Cnty. Bd. of Chosen Freeholders, 340 N.J. Super. 254, 262 (App. Div. 2001) (quoting Holland v. Island Creek Corp., 885 F. Supp. 4, 6 (D.D.C. 1995); see also In re Bevill, Bresler & Schulman, 805 F.2d 120, 126 (3d Cir. 1986)).

We consider the purpose of asserting the privilege when determining whether a specific communication between a client and an attorney is protected. In re Custodian of Recs., Crim. Div. Manager, 420 N.J. Super. 182, 187 (App. Div. 2011). The privilege should be strictly construed. Paff v. Div. of L., 412 N.J. Super. 140, 150-51 (App. Div. 2010) (citing In re Selser, 15 N.J. 393, 405-06 (1954)).

Judge Mizdol found "the Vaughn index . . . indicated . . . a single email by [the City's attorney] to Hackensack officials, representatives, or agents which

A-0044-20

was made in the course of [counsel's] legal representation of the city. . . . The court's in camera review confirms this explanation." She concluded the attorney-client privilege applied because "(1) the conversation was made with the purpose of seeking or rendering legal advice, (2) [the financial advisor] was copied on the email in his capacity as the City's financial planner on a matter involving both legal and financial matters."

We affirm for the reasons expressed by the judge and reject plaintiff's argument that applying the common interest test would lead to a different result. The email communicated legal advice about the underlying planning board and zoning ordinance litigation to city officials as a group and included the financial planner in his official capacity. There is no evidence the communication was intended to be public—the City's counsel and the financial planner filed certifications to this effect.

Counsel Fees

We reject the parties' challenges to the counsel fee determination. OPRA allows a prevailing party to receive "<u>reasonable</u> attorney's fee[s]." N.J.S.A. 47:1A-6 (emphasis added). "[T]he phrase 'prevailing party' is a legal term of art that refers to a 'party in whose favor a judgment is rendered.'" <u>Mason v. City of Hoboken</u>, 196 N.J. 51, 72 (2008) (quoting <u>Buckhannon Bd. & Care Home, Inc.</u>

13

v. W. Va. Dep't of Health and Hum. Res., 532 U.S. 598, 603 (2001)).  "A plaintiff is considered a prevailing party 'when the actual relief on the merits of [the] claim materially alters the relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff.'"  Teeters v. Div. of Youth and Fam. Servs., 387 N.J. Super. 423, 432 (App. Div. 2006) (alteration in original) (quoting Warrington v. Vill. Supermarket, Inc., 328 N.J. Super. 410, 420 (App. Div. 2000)).

In Mason, the Court held "requestors are entitled to attorney's fees under OPRA . . . when they can demonstrate:  (1) 'a factual causal nexus between plaintiff's litigation and the relief ultimately achieved'; and (2) 'that the relief ultimately secured by plaintiffs had a basis in law.'"  Mason, 196 N.J. at 76 (quoting Singer v. State, 95 N.J. 487, 494-95 (1984)).  "The party does not need to obtain all relief sought, but there must be a resolution that 'affect[s] the defendant's behavior towards the prevailing plaintiff.'"  Smith v. Hudson Cnty. Reg., 422 N.J. Super. 387, 394 (App. Div. 2011) (alteration in original) (quoting Teeters, 387 N.J. Super. at 432).  Such action includes a "change (voluntary or otherwise) in the custodian's conduct."  Spectraserv, Inc. v. Middlesex Cnty. Utils. Auth., 416 N.J. Super. 565, 583 (App. Div. 2010) (citing Teeters, 387 N.J. Super. at 430-31).

A-0044-20

Here, the judge conducted a fact-sensitive inquiry, demonstrating plaintiff was the prevailing party under the catalyst theory and was entitled to an award. See Mason, 196 N.J. at 79. Plaintiff showed a causal nexus between the litigation and results achieved because the suit caused defendants to release an additional 831 documents. Moreover, plaintiff's suit modified defendants' behavior to plaintiff's benefit. See Teeters, 387 N.J. Super. at 432.

Defendants' claims they would have responded to the revised OPRA request without court intervention are unsupported by the record. As the judge commented, defendants acted arbitrarily in capping the search hits to 400 per term. The litigation and the court's order ultimately produced the information sought in the OPRA request.

The judge's calculation of the lodestar and final fee amount was not an abuse of discretion. In determining the fee award pursuant to fee-shifting provisions, courts must determine the "lodestar" amount, which is "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." Litton Indus., 200 N.J. at 406 (quoting R.M. v. Sup. Ct. of N.J., 190 N.J. 1, 10 (2007)). The calculation includes a careful evaluation of the specific hourly rates supporting the fee application. Rendine v. Pantzer, 141 N.J. 292,

A-0044-20

335 (1995). To determine the reasonableness of a fee, the trial court must weigh the RPC 1.5(a) factors.

Our Supreme Court has stated: "The trial court should conduct a qualitative analysis that weighs such factors as the number of documents received versus the number of documents requested, and whether the purpose of the OPRA was vindicated by litigation." New Jerseyans for a Death Penalty Moratorium v. N.J. Dep't of Corr., 185 N.J. 137, 155 (2005). Vindication may mean "acquiring that one smoking gun record hidden amongst hundreds of pages or . . . it may be the absence of any records." Ibid. (internal quotations omitted). The court should not rely "on percentages of documents obtained to determine whether a reduction of the lodestar is appropriate in OPRA cases." Id. at 154.

A fee award "can be problematic" when a plaintiff obtains only partial success. Id. at 153. As such, "courts [can] 'reduce the lodestar fee if the level of success achieved in the litigation is limited as compared to the relief sought.'" Id. at 154 (quoting Rendine, 141 N.J. at 336). "[A] reduction may be appropriate if 'the hours expended, taking into account the damages prospectively recoverable, the interests to be vindicated, and the underlying statutory objectives, exceed those that competent counsel reasonably would have

16

expended.'" Walker v. Guiffre, 209 N.J. 124, 132 (2012) (quoting Rendine, 141 N.J. at 336)).

We disagree with plaintiff's argument the judge relied on improper factors in calculating the fee award. The judge conducted a careful review of the time and costs billed by counsel and explained why she reduced the sums sought.

The judge's conclusion plaintiff did not vindicate OPRA was not fatal to awarding fees. The purpose of OPRA "is to maximize public knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process." Times of Trenton Publ'g Corp. v. Lafayette Yard Cmty. Dev. Corp., 183 N.J. 519, 535 (2005) (quoting Asbury Park Press v. Ocean Cnty. Prosecutor's Off., 374 N.J. Super. 312, 329 (Law Div. 2004)). The fee award reflects the partial success achieved by plaintiff, which is compensable. New Jerseyans, 185 N.J. at 154.

The judge's calculation of the documents she concluded were improperly withheld by defendants did not abrogate the Supreme Court's admonition that trial courts should not rely on a percentage calculation of the record yielded by the OPRA litigation to calculate fees. A thorough review of the record shows the judge performed a qualitative analysis of plaintiff's counsel's billing when she reduced the lodestar figure. Her findings were based on the substantial

17

credible evidence in the record, thoroughly explained, and do not warrant our intervention.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0044-20