**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1186-23

E.Z.,[1]

    Plaintiff-Appellant,

v.

DEPTFORD TOWNSHIP
BOARD OF EDUCATION
and TODD REITZEL in his
official capacity as School
Business Administrator/
Board Secretary,

    Defendants-Respondents.

_____

Submitted August 11, 2025 – Decided August 19, 2025

Before Judges Firko and Paganelli.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-0377-23.

Jamie Epstein, attorney for appellant.

---

[1] We use initials to protect the privacy interests of plaintiff, the parent of a student enrolled in a New Jersey public school. <u>See</u> N.J.A.C. 6A:32-7.5(a); New Jersey Pupil Records Act, N.J.S.A. 18A:36-19; <u>see also</u> <u>R.</u> 1:38-3(a)(1).

Marmero Law, LLC, attorneys for respondents (Albert K. Marmero, on the brief).

PER CURIAM

Plaintiff E.Z. appeals from the trial court's September 26, 2023 order awarding her attorney's fees and costs pursuant to the Open Public Records Act (OPRA), N.J.S.A. 47:1A-1 to -13, in the amount of $22,569. The trial court determined defendants Deptford Township Board of Education (Deptford) and Todd Reitzel, Deptford's School Business Administrator and Board Secretary (collectively defendants), violated OPRA by denying plaintiff access to her middle school child G.R.'s student records because she was not G.R.'s custodial parent. Among other things, plaintiff contends on appeal that the trial court abused its discretion in reducing her requested fee amount and denying a fee enhancement.

Plaintiff also appeals from the November 28, 2023 order denying reconsideration of the September 26, 2023 order. Because the trial court did not abuse its discretion in granting the amount of attorney's fees awarded and denying reconsideration of the amount, we affirm both orders.

I.

During the 2022-2023 school year, according to her verified complaint, plaintiff made multiple requests to defendants for access to G.R.'s student records, and on October 29, 2022, submitted a written OPRA request to Reitzel seeking the following:

(1) all policies and procedures promulgated, enforced, or administered by [Deptford] governing registration as an emergency contact for students;

(2) all policies and procedure promulgated, enforced, or administered by [Deptford] governing parent registration to Genesis [Portal (Genesis)];

(3) G.R.'s report cards for the 2021-2022 school year;

(4) blank copies of the form(s) required to register as a contact for a student;

(5) copies of court orders concerning plaintiff, A.R. (G.R.'s father), or G.R.;

(6) all emails or other electronic correspondence in which A.R. is a sender or recipient, from May 1, 2022, through October 29, 2022, with seven individuals identified in the request;

(7) all emails and other electronic correspondence sent to or by the seven individuals referenced above, which include A.R. as a sender or recipient, and plaintiff, G.R., and other individuals in the subject or body of the communications.

The following business day, Reitzel sent plaintiff an email confirming receipt of her OPRA request. Reitzel explained he would respond after obtaining "correct guidance" from defendants' attorney. Plaintiff never received a response.

As stated in her verified complaint, on February 8, 2023, plaintiff submitted a new OPRA request, which included the same seven requests in her October 29, 2022 OPRA request, plus three additional requests:

(1) G.R.'s report cards for the 2022-2023 school year;

(2) emails and electronic communications previously requested for the May 1, 2022 through February 8, 2023 time period; and

(3) G.R.'s progress reports for the 2021-2022 and 2022-2023 school years.

Reitzel did not respond to plaintiff's February 8, 2023 OPRA request. Plaintiff sent follow-up emails to defendants and the superintendent of schools stating her parental rights were being violated and requesting action be taken because no court order terminated her parental rights or restricted her right to G.R.'s educational records.

On March 17, 2023, defendants denied plaintiff's OPRA request and access to Genesis, which allows parents and guardians to access a student's academic information, claiming she was not G.R.'s legal guardian. After two

4

follow-up emails from plaintiff, the superintendent emailed plaintiff stating he was denying her access because this was a "matter . . . [for] the court." Defendants maintained that plaintiff did not have legal or physical custody of G.R. since February 2020, and therefore, did not have a legal right to G.R.'s student records.

Plaintiff responded the same day by email requesting Deptford's administrators provide her with dates of any court orders they possessed prohibiting her from accessing G.R.'s records. Defendants did not respond to plaintiff's email request.

On April 7, 2023, plaintiff filed a verified complaint and an order to show cause (OTSC) in the Law Division. Plaintiff alleged that she filed a Genesis parent access form seeking to access G.R.'s "attendance, grades, assignments, and code of conduct incidents." Plaintiff claimed her parental rights were not terminated, and she was not prohibited from accessing or obtaining G.R.'s educational records.

Plaintiff alleged defendants violated OPRA by not releasing the requested documents and information. Plaintiff demanded defendants disclose all documents and information requested in her February 8, 2023 OPRA request, and that she be awarded attorney's fees under N.J.S.A. 47:1A-6.

The trial court entered the OTSC. Defendants answered the verified complaint. According to defendants, they denied plaintiff's OPRA requests in compliance with a February 24, 2020 Family Part order, which awarded G.R.'s father full legal and physical custody of G.R. Defendants also denied plaintiff's OPRA requests under the Family Educational Rights and Privacy Act (FERPA),[2] a federal law that protects the privacy of student educational records. Defendants argued that plaintiff's remedy was through filing a complaint with the Student Privacy Policy office and submitting a common law access request.

On May 8, 2023, the trial court entered an order for in camera review of the February 24, 2020 Family Part order and "any documents and correspondence that concern the parental rights of [p]laintiff that are relied upon in denying items of [p]laintiff's request." On May 23, 2023, after conducting an in camera review, the trial court ordered defendants to disclose the documents and information requested in plaintiff's February 8, 2023 OPRA request with appropriate redactions and indexing of the reasons for redaction. The trial court determined that plaintiff was the prevailing party under OPRA and was entitled to all reasonable counsel fees and costs. Plaintiff was directed to submit a

---

[2] 20 U.S.C. § 1232g.

A-1186-23

certification of services, and defendants were permitted to respond. A memorializing order was entered.

For reasons that are not clear in the record, on July 16, 2023, plaintiff filed a motion for counsel fees and costs as the prevailing party under OPRA. Plaintiff initially requested 67.4 hours at the rate of $500 per hour, for a total lodestar amount of $31,450.[3] Plaintiff also sought a fifty percent fee enhancement, claiming this matter is one of "first impression representing new law and public importance," not only in this State but nationwide. Plaintiff argued that her attorney has thirty-four years of experience in the areas of family, education, and public records law.

Plaintiff submitted an invoice and a certification stating that her matter was taken on a contingency fee basis and provided certifications from four attorneys who sought fees of $500 and $550 per hour in unrelated similar matters. In addition, plaintiff submitted the Philadelphia Community Legal Services Hourly Rate Survey and two judicial decisions approving the stated rates requested in the other unrelated cases.

---

[3] Plaintiff's calculation is incorrect. The lodestar amount requested was actually $33,700, based on 67.4 hours times $500 per hour.

A-1186-23

Defendants opposed the motion, in part, arguing that plaintiff was entitled to reasonable counsel fees and costs as the prevailing party under OPRA, but the award was not subject to enhancement. Defendants maintained that plaintiff obtained the relief she sought "a little over a month" after filing the verified complaint. Defendants countered that plaintiff's requests for G.R.'s student-related records did not relate to a matter of public interest, and defendants made "a well-intentioned, but incorrect, effort to advance the public interest by erring on the side of protecting [G.R.] when orders and documentation exists which ma[d]e it clear that [G.R. wa]s not to be alone with [p]laintiff." Defendants argued that the in camera review of the records in this case resolved the matter, there was minimal litigation involved, and no novel issues were raised.

In reply, plaintiff submitted an updated invoice seeking $36,880 for seventy-nine hours of services, plus a fifty-percent enhancement of $18,440 for 39.5 hours, for a grand total of $55,320.[4]

On September 14, 2023, the trial court held a hearing on plaintiff's fee request. Following arguments by counsel, the trial court ruled the fee

_____

[4] In her merits brief, plaintiff contends she requested $500 per hour multiplied by the "total reasonable hours" expended of 91.6 hours for an award of $45,800, plus a fifty percent enhancement of $22,900, for a total requested award of $68,700. The discrepancies in the figures are not germane to our decision.

application was a "garden variety OPRA application," and it did not find "anything novel" or "complicated" about the case. After applying the Rules of Professional Conduct RPC 1.5(a) factors,[5] the trial court awarded counsel fees

---

[5] RPC 1.5(a) provides that:

> A lawyer's fee shall be reasonable. The factors to be considered in determining the reasonableness of a fee include the following:
>
> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;

A-1186-23

at an hourly rate of $400 per hour for 54.1 hours, and costs, for a total amount of $22,569. The trial court denied plaintiff's request for an enhancement. A memorializing order was entered.

Plaintiff filed a motion for reconsideration limited to the $400 hourly rate ordered as opposed to the requested $500 hourly rate. Plaintiff did not move for reconsideration of the fee enhancement denial. On November 28, 2023, the trial court entered an order denying plaintiff's motion for reconsideration. This appeal followed.

On appeal, plaintiff argues the trial court abused its discretion in reducing the requested fee request by reducing the requested hourly rate and amount of time expanded. Plaintiff also contends the trial court abused its discretion in denying a fee enhancement.

## II.

We review an award of attorney's fees and costs for abuse of discretion. Hansen v. Rite Aid Corp., 253 N.J. 191, 211-12 (2023). Applications for fees and costs are not "an invitation to become mired in a second round of litigation."

---

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; [and]

(8) whether the fee is fixed or contingent.

A-1186-23

Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 24 (2004). On appeal, "fee determinations by trial courts will be disturbed only on the rarest occasions, and then only because of a clear abuse of discretion." Rendine v. Pantzer, 141 N.J. 292, 317 (1995); see also Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001).

Additionally, a judge reviewing a counsel fee request must determine the "lodestar" fee, which includes the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. Hansen, 253 N.J. at 215-17. A judge's "determination of the lodestar amount is the most significant element in the award of a reasonable fee because that function requires the trial court to evaluate carefully and critically the aggregate hours and specific hourly rates advanced by counsel for the prevailing party to support the fee application." Rendine, 141 N.J. at 335. In determining the lodestar fee, the judge "should not accept passively the submissions of counsel to support the lodestar amount[.]" Ibid. A judge is permitted to reduce the lodestar amount by the number of hours not reasonably expended. Hansen, 253 N.J. at 216-17.

A.

Plaintiff first argues the trial court abused its discretion in reducing the fee request. Plaintiff asserts that her requested hourly rate of $500 per hour was

11

unopposed by defendants. Plaintiff maintains the trial court erred by reducing the unopposed hourly rate and basing its decision on the $400 hourly fee customarily charged in the Gloucester County vicinage. Plaintiff contends the trial court abused its discretion by rejecting the $500 hourly rate requested and relying on its "personal experience" on the market rate for attorneys in Gloucester County. In plaintiff's view, the trial court's personal opinion based on its own professional experience does not satisfy the analysis required under Rendine to ascertain a reasonably hourly rate.

Defendants counter this case involves "a simple OPRA request" seeking student records and was not a novel case of first impression. Instead, defendants argue they were hesitant to release the requested records based on the Family Part's custody order. According to defendants, they and other similarly situated school districts, receive phone calls and requests daily regarding custodial issues and inquiries about which parties have access to student records. Defendants contend the trial court properly reduced plaintiff's counsel's time entries because they did not represent a "legitimate basis" to vindicate plaintiff's rights, and the time entries were unreasonable.

We first consider the OPRA statute, then examine what a prevailing party is in the OPRA context. "The purpose of OPRA 'is to maximize public

12

knowledge about public affairs in order to ensure an informed citizenry and to minimize the evils inherent in a secluded process.'" Times of Trenton Publ'g Corp. v. Lafayette Yard Cmty. Dev. Corp., 183 N.J. 519, 535 (2005) (quoting Asbury Park Press v. Ocean Cnty. Prosecutor's Off., 374 N.J. Super. 312, 329 (Law Div, 2004)). The statute provides for fee shifting to level the playing field between an ordinary citizen and the State's "inexhaustible resources." New Jerseyans for a Death Penalty Moratorium v. N.J. Dep't of Corr., 185 N.J. 137, 153 (2005).

OPRA conditions fee awards on the finding that a requestor "prevail[]" in court after being "denied" access to government records. N.J.S.A. 47:1A-6. A plaintiff is considered to have prevailed "when the actual relief on the merits of [the] claim materially alters the relationship between the parties by modifying . . . defendant's behavior in a way that directly benefits . . . plaintiff." Underwood Props., LLC v. City of Hackensack, 470 N.J. Super. 202, 215 (App. Div. 2022) (alteration in original) (quoting Teeters v. Div. of Youth and Fam. Servs., 387 N.J. Super. 423, 432 (App. Div. 2006)).

OPRA plaintiffs are not required to obtain a final judgment in their favor to be awarded fees. Plaintiffs are also entitled to fees under a "catalyst theory," where they can demonstrate: "(1) 'a factual causal nexus between plaintiff's

13

litigation and the relief ultimately achieved'; and (2) 'that the relief ultimately secured by plaintiff[] had a basis in law.'" Mason v. City of Hoboken, 196 N.J. 51, 76 (2008) (quoting Singer v. State, 95 N.J. 487, 494 (1984)).

In this matter, the trial court did not abuse its discretion in reducing the requested fee and hourly rate. The trial court issued a lengthy oral decision setting forth its findings after considering the RPC 1.5(a) factors. The trial court emphasized the amount of litigation here "wasn't much," and it was "shocked" at the fee being requested. The trial court noted a $500 or higher hourly fee is not customary in Gloucester County, and $400 per hour is at the "higher-end" and "more akin to the customary rate."

The trial court reasoned that the amount requested was "triple" what it normally sees for a case involving this type of litigation. The trial court highlighted that plaintiff shopped around to find an experienced OPRA attorney to handle her case. However, the trial court did not consider that fact to be determinative as to the hourly rate charged. We reject plaintiff's argument that the certifications submitted in support of a higher hourly fee are rooted in competent evidence and that the trial court abused its discretion in awarding a $400 hourly rate.

A-1186-23

Here, the trial court meticulously reviewed the time entries and found reductions were warranted, reiterating this was a "basic OPRA case." The trial court rejected entries that were duplicative and excessive and gave specific reasons for doing so. The record supports the trial court's determination. We therefore reject plaintiff's arguments that the trial court abused its discretion in reducing the requested fee. See Rendine, 141 N.J. at 317.

B.

Plaintiff also argues that the trial court abused its discretion by denying a fee enhancement. Plaintiff contends contingency fee enhancement is required because the issue of the effect of child custody orders on a non-custodial parent's right to access his or her child's student records "via public records law is one of first impression in New Jersey and in the United States," citing Hansen. She asserts there is a "public importance" to attract counsel to take on these cases, which are "entirely contingent on the unpredictable outcome of first awarding full equitable relief" to plaintiff.

Defendants counter that plaintiff does not meet the requirements for a fee enhancement. Defendants argue that the matter under review does not involve civil rights, consumer protection, environmental policies, or a matter of public interest but rather plaintiff's private interest in obtaining G.R.'s student records.

15

Defendants maintain they conceded—on the record—that plaintiff was a prevailing party on May 23, 2023, and "there is [no] risk of non-payment of any fee awarded."

The Rendine Court explained that the trial court, after considering the lodestar fee, "should consider whether to increase that fee to reflect the risk of nonpayment in all cases in which the attorney's compensation entirely or substantially is contingent on a successful outcome." 141 N.J. at 337. The Court also instructed that a fee enhancement is appropriate "only in the rare and exceptional case in which the risk of nonpayment has not been mitigated at all, i.e., where the 'legal' risk constitutes an economic disincentive independent of that created by the basic contingency in payment . . . [and] the result achieved . . . is significant and of broad public interest." Hansen, 253 N.J. at 218 (alteration in original) (quoting Rendine, 141 N.J. at 343) (internal citations omitted).

We agree with the trial court's determination that plaintiff was not entitled to a fee enhancement. The trial court found under the "totality of the circumstances," there was "nothing out of the ordinary" in this OPRA case. Moreover, the trial court highlighted that plaintiff "is being reimbursed at a very high rate" for the amount of work her counsel performed. The trial court noted

the statute is "pretty clear" as to whether a parent—like plaintiff—is entitled to educational records.

On this record, we discern no abuse of discretion in the trial court's denial of a fee enhancement. Plaintiff failed to meet her burden under Rendine and its progeny to be entitled to a fee enhancement. We observe that plaintiff swiftly obtained G.R.'s educational records after the trial court's in camera review, which notably occurred prior to any discovery or litigation. In sum, we conclude the trial court's determination denial of a fee enhancement to constitute a proper exercise of its discretion.

III.

We next consider plaintiff's argument that the trial court erred in denying her motion for reconsideration. Under Rule 4:49-2, "the decision to grant or deny a motion for reconsideration rests within the sound discretion of the trial court." Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015). We review a "trial court's denial of plaintiff's motion for reconsideration for abuse of discretion." Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (citing Kornbleuth v. Westover, 241 N.J. 289, 301 (2020)). Abuse of discretion "arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an

A-1186-23

impermissible basis." Kornbleuth, 241 N.J. at 302 (quoting Pitney Bowes Bank, 440 N.J. Super. at 382).

A motion for reconsideration "is primarily an opportunity to seek to convince the court that either (1) it has expressed its decision based upon a palpably incorrect or irrational basis, or (2) it is obvious that the court either did not consider, or failed to appreciate the significance of probative, competent evidence." Id. at 301 (quoting Guido v. Duane Morris LLP, 202 N.J. 79, 87-88 (2010)). "[T]he magnitude of the error cited must be a game-changer for reconsideration to be appropriate." Palombi v. Palombi, 414 N.J. Super. 274, 289 (App. Div. 2010).

"Said another way, a litigant must initially demonstrate that the [c]ourt acted in an arbitrary, capricious, or unreasonable manner, before the [c]ourt should engage in the actual reconsideration process." D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990). "A litigant should not seek reconsideration merely because of dissatisfaction with a decision of the [c]ourt." Ibid. Moreover, "[r]econsideration cannot be used to expand the record and reargue a motion." Cap. Fin. Co. of Del. Valley v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008). "[I]f a litigant wishes to bring new or additional information to the [c]ourt's attention which it could not have provided on the

A-1186-23

first application, the [c]ourt should, in the interest of justice (and in the exercise of sound discretion), consider the evidence." D'Atria, 242 N.J. Super. at 401.

Having reviewed the record, we are satisfied the trial court did not abuse its discretion in denying plaintiff's reconsideration motion. The trial court reconsidered its "personal knowledge" as to the customary hourly rate in Gloucester County and determined the $400 hourly rate was reasonable. Plaintiff failed to proffer any evidence that the trial court's determination was arbitrary, capricious or unreasonable, or made without a rational explanation. Kornbleuth, 241 N.J. at 302.

To the extent that we have not addressed any remaining arguments, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division